RAYMOND DATTILO, Petitioner-Appellee, v. MARY GROTH, Respondent-Appellant.

First District (3rd Division)  No. 1—90—2051

Opinion filed November 20, 1991.

GREIMAN, J., dissenting.

Candace J. Wayne, of Chicago, for appellant.

Joel S. Ostrow, of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Respondent, Mary Groth, appeals from an order changing the name of her child born out of wedlock from Brian Joseph Groth to Brian Joseph Dattilo Groth. Respondent argues that there was no evidence that to change Brian's name was in his best interest.

The parties agree that petitioner filed a petition to change the last name of Brian, but the petition does not appear in the record on appeal. According to a copy of a petition contained in the appen-

dix to petitioner's brief, petitioner desired that the child use the name of Brian Groth-Dattilo.

Petitioner testified to the following. Brian was born August 11, 1983. Petitioner exercised all his visitation rights. Brian once told petitioner that he wanted his name to be Brian Joseph Dattilo. Petitioner had a conversation with Brian in which Brian referred to the fact that he did not have his father's name like other children did. Brian said he was concerned about the matter and asked when it would be resolved. Petitioner told Brian that he was working on it and not to be concerned. Brian asked when the transaction would take place. The trial court questioned whether a six-year-old child was mature enough to use such language, and petitioner responded that those were the words used and that Brian was "very with it." On a few occasions, petitioner asked Brian to write the name Brian Dattilo, and Brian had mixed emotions about it. Petitioner also told Brian on a few occasions that he would like Brian to have the last name of Dattilo. Brian told him about 20 or 25 times that he wanted the name Dattilo.

Brian testified under examination by the trial court that he would like his name to be Brian Joseph Groth because it had been his name all his life. He shook his head in response to the questions whether he wanted the name Brian Joseph Groth Dattilo or Brian Joseph Dattilo.

In its oral ruling, the trial court referred to the fact that in the United States normally children bear the name of the father and stated that respondent had to show that the name should not be changed because it would be harmful. The petition was denied, but the trial court ordered that the name be changed to Brian Joseph Dattilo Groth.

At a hearing on the motion to reconsider, the trial court stated that the facts did not warrant the change of the name that petitioner requested. Respondent's motion to reconsider was denied.

Respondent argues on appeal that: (1) the trial court changed Brian's name without any basis in law or fact but based on "some bizarre notion of paternal name propriety"; (2) Brian clearly stated that he did not want his name changed; and (3) although it was petitioner's burden of proof to show that the change in name was in Brian's best interest, the trial court placed the burden instead on respondent to prove that the name change would not be in Brian's best interest.

Petitioner responds that: (1) Brian's wishes should be disregarded because he was only six years old; (2) the use of petitioner's

name was beneficial in regard to petitioner's relationship with Brian because Brian's parents were never married, because respondent undermined petitioner's interest in Brian and Brian's ability to identify with petitioner, and because respondent continuously interfered with petitioner's visitation rights; (3) the trial court found that it was in Brian's best interest to have the name Dattilo appear as a middle name; and (4) the use of the father's name as a middle name neutralized the effects of the mother's behavior.

■ "An Act to revise the law in relation to names" (Name Change Act) provides that an order changing the name of minors

"shall only be entered *** if the court finds by clear and convincing evidence that the change is necessary to serve the best interest of the child. In determining the best interest of a minor child under this Section, the court shall consider all relevant factors including:

(1) the wishes of the child's parents, and any person acting as a parent who has physical custody of the child.

(2) the wishes of the child and the reasons therefor. The court may interview the child in chambers to ascertain the child's wishes with respect to the change in name. ***

(3) the interaction and interrelationship of the child with his or her parents or persons acting as parents who have physical custody of the child, step-parents, siblings and step-siblings or any other person who may significantly affect the child's best interest.

(4) the child's adjustment to his or her home, school and community." Ill. Rev. Stat. 1989, ch. 96, par. 1.

In *In re Marriage of Presson* (1984), 102 Ill. 2d 303, 309, 465 N.E.2d 85, 88, the Illinois Supreme Court outlined the factors to consider in determining whether a name change would be in the best interest of a child: (1) the wishes of the child and the parents; (2) the stated reasons for the proposed name change; (3) the child's age and maturity; (4) the nature of the family situation; (5) the strength of the tie between the child and each parent; (6) any misconduct toward or neglect of the child by the parent opposing the change; and (7) the name by which the child had customarily been called.

■ The trial court properly may have found that to make petitioner's surname Brian's middle name was in Brian's best interest. The middle name change would not be disruptive as a last name change might be and would affirm Brian's relationship with his father, with whom he did not live. The trial court may have deter-

mined that Brian was too immature to know what he wanted his name to be. (See *Presson*, 102 Ill. 2d at 310, 465 N.E.2d at 88 (seven-year-old boy's testimony about wanting to use names of both parents was not controlling because of child's questionable judgment).) Although the trial court incorrectly stated the burden of proof (section one of the Act provides that the court must find by clear and convincing evidence that the change of name is necessary to serve the best interest of the child (Ill. Rev. Stat. 1989, ch. 96, par. 1), the result is supported by the evidence.

The judgment of the circuit court is affirmed.

Affirmed.

RIZZI, J., concurs.

JUSTICE GREIMAN, dissenting:

This case is not a matter of great moment to our system of justice. Some might say that it is a trivial matter and that the parties ought to consider the best interests of the child and accept the equitable decision of the trial court.

However, in many ways this case is a crucible for appellate court judges.

The child's father has supported him, has a close relationship with him and understandably desires him to bear his name. The mother, who has never been married to the father, bore this child, has been the primary person responsible for his development and education, desires the child to bear her name and have no part of the father's name introduced into his cognomen.

The trial court, seeking to do equity, resolves the matter in a most reasonable manner by ordering that the father's name be designated as a middle name.

The majority cites *In re Marriage of Presson* (1984), 102 Ill. 2d 303, 309, 465 N.E.2d 85, 88, which acknowledges that a name change must be in the best interest of the child and sets out seven criteria for a court to consider. At best, only two of the factors in *Presson* would be applicable to the facts of this case.

In any event, *Presson* was decided in 1984 and in 1985 the General Assembly amended the Name Change Act (Ill. Rev. Stat. 1985, ch. 96, par. 1) to require that any changes be effected only "if the court finds by clear and convincing evidence that the change is nec-

essary to serve the best interest of the child."[1] Therefore, the standard that might obtain under *Presson* has been superseded by the Act of the General Assembly in the year following its decision.

The statute has been construed to acknowledge as a basis for name change the expanded standard of clear and convincing evidence necessary to the best interests of the child. (*In re Marriage of Schaefer* (1987), 161 Ill. App. 3d 841, 515 N.E.2d 710.) It is clear that use of the term "clear and convincing" imposes upon the petitioner an extraordinary burden under law and that the court must employ the standard imposed upon it by statute.

Often appellate judges must only speculate as to what was in the mind of the trial court. Unfortunately, in the case at bar, the trial court leaves no room for speculation as to what was in his mind. He lays on the record his entire mental processes for all to examine.

The trial court tells us:

> "The petition indicates that it would be \*\*\* in the child's best interests that his name be changed. There has not been a great deal of evidence along those lines.
>
> \* \* \*
>
> Therefore, I have not heard evidence to warrant that it would be in the best interest of the child and in the best welfare for the child that the name be changed.
>
> \* \* \*
>
> I decided that the facts \*\*\* in this case did not warrant the relief that was requested by [the father]."

The trial court's offerings and conclusion, therefore, are at serious odds with the language and intent of section 1 of the Name Change Act (Ill. Rev. Stat. 1989, ch. 96, par. 1).

He advised the parties:

> "In the United States of America normally children, except in some unusual circumstances, bear the name of their father.

---

[1] Amendment to the Name Change Act was initiated by the 1984 Supreme Court Recommendations to the General Assembly. Moreover, the issue of "clear and convincing evidence" was considered separately by the House, which imposed this standard by Amendment 2 to House Bill 197 of the 84th General Assembly. Originally the standard was only a rebuttable presumption that favored the use of the family name of the natural father. 84th Ill. Gen. Assem., House Bill 197, Amendment 2, 1985 Sess.; Amendment adopted April 24, 1985.

* * *

I would venture to say 99% of the children in the United States bear the name of their father

* * *

I still feel that in our country the child takes the father's name. In our country the wife takes the husband's name, although that is not as common nowadays. It is something that is done."

The court seems to ignore the fact that the parents have never been married. Additionally, the court appears to shift the burden of coming forward with evidence to the respondent mother in contravention of the statute. Again, the court has afforded us an opportunity to examine his thinking process. Again, he has strayed from the standard provided by the legislature.

The trial court states that he has "chancery powers" which allow him to insert the father's name as the middle name of the child. While such action is intelligent, wise and thoughtful on the part of the trial judge, it is without authority.

The issue is not whether the burden on the youngster to bear the father's name is difficult or unnecessary since many of us bear the burden of a name we might not have selected for ourselves.[2]

I noted this case was a crucible for appellate judges because the trial court has done the fair, the equitable, the thoughtful thing, but has ignored the statute governing such action, imposed an improper burden upon one of the parties and looked to matters outside of the record for direction.

I believe that appellate decisions should stand as signposts for future trial judges and would return this to the trial court for a new hearing.

Accordingly, I respectfully dissent.

---

[2]This writer is none too pleased with his middle name "Joel" and similar dissatisfaction may someday be voiced by people currently being named Amber, Brittani, Ashley, Brandi, Blaine, Chelsea, Kelsee, Courtney, Krista, Sierra, Shawna, Chantel, Shayla, Tiffany, Moira, Katlynn, Maya, Shira, Joshua, Justin, Cody, Jared, Cameron, Chad, Kyle, Zachary, Corey, Bryce or Trevor. It is because of this dissatisfaction that we affect "Buddy," "Bunny," "Spike," "Honey" and a variety of other nicknames to take the place of these unloved monikers.