1 July 1999

NO. 4-98-0650

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

STACEY L. STOCKTON, n/k/a STACEY L. ) Appeal from 

SHANGRAW,    ) Circuit Court of

Petitioner-Appellee, ) McLean County

v. ) No. 95F636

MATTHEW J. OLDENBURG, ) 

Respondent-Appellant. ) Honorable         

) W. Charles Witte,

) Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent Matthew J. Oldenburg appeals from the judgment of the circuit court of McLean County in this action to establish his parentage of Lauren Joanne Stockton (born August 10, 1995) brought by the child's mother, petitioner Stacey L. Stockton, n/k/a Stacey L. Stockton Shangraw.  The issues are whether the trial court erred by (1) denying Matthew's petition to change the child's name to add his surname, (2) granting Matthew a tax exemption for the child in alternate years, (3) ordering Matthew to pay Stacey for lost wages and nonmedical expenses arising from her pregnancy, and (4) not granting Matthew more liberal visitation and the opportuni­ty to provide care for the child in lieu of day care.  We affirm in part and reverse in part and remand.

The facts need not be set forth in detail and will be discussed as necessary for an understanding of this court's disposition.

Matthew petitioned the trial court to change the child's last name to Lauren Stockton Oldenburg.  As to a minor, an order to 

change a child's name shall not be entered unless the trial court finds by 
clear
 
and
 
convincing
 
evidence
 that a change is 
necessary
 to serve the 
child's
 
best
 
interest
.  In making that determination, the trial court may consider, among other factors, (1) the wishes of the child's parents and custodian; (2) the child's wishes and the reasons therefor; (3) the child's interaction and interrela­

tionship with the parents, custodian, other persons in the familial relationship such as stepparents, siblings, stepsiblings, or any other person who may significantly affect the child's best interests; and (4) the child's adjustment to home, school, and community.  735 ILCS 5/21-101 (West 1996).  The trial court's findings as to the child's best interests will not be overturned on appeal unless they are against the manifest weight of the evidence.  
In re Petition of Craig
, 164 Ill. App. 3d 1090, 1094, 518 N.E.2d 728, 730 (1987).

In this case, Matthew acknowledges that Lauren is too young to express her wishes or to have any problem with adjustment to home, school, or community.  According to Matthew, these factors are therefore not relevant.  We disagree.  The trial court could reason­ably find that it is premature to determine Lauren's best interests with regard to name change.  Moreover, Matthew relies on the possible confusion that may result in Stacey's home from the variety of last names there.  Stacey has now added the last name of her husband Eric Shangraw to her maiden name while retaining the name Stockton.  They have a daughter, Rachel Shangraw.  Only Lauren will have the last name Stockton.  Matthew's suggested solution, however, does not rectify that situation.  More persuasive is Matthew's argument that the name change would allow Lauren to more closely identify with him as her father and with his family, now including his wife Barbara and Brianna Oldenburg, a half-sister of Lauren.  Neverthe­less, the trial court was not required to find that the necessity of a name change for Lauren's best interests was estab­lished by clear and convinc­ing evidence.  

Dr. Laurie Bergner, a clinical psychologist retained by Matthew to render an opinion regarding visitation, stated "I think it could be nice for Lauren in the future to have both Oldenburg and Stockton in her name."  Bergner added, "it's less confusing, and it makes it very clear that they're both her parents equally.  In our culture, most children have their father's name."

It is also recognized that a noncustodial parent is at a disadvantage in maintaining a strong relationship with the child and the child carrying that parent's name may demonstrate a noncustodial parent's continuing interest in and identity with the child.  
In re Marriage of Presson
, 102 Ill. 2d 303, 312, 465 N.E.2d 85, 89 (1984).  Adding Oldenburg to Lauren's name would affirm her relationship with her father.  See 
Dattilo v. Groth
, 222 Ill. App. 3d 467, 469, 584 N.E.2d 196, 197 (1991) (also finding that using the father's surname as a middle name would be less disrup­tive than changing the child's surname).  However, in this case, the evidence only established that a name change "could be nice."  That does not make it 
necessary
.  The conflicting desires of the parents cancel each other out, to some extent, and the remaining evidence does not establish that a name change is required or is in Lauren's best interests.  See 
In re Parentage of Mattson
, 240 Ill. App. 3d 993, 997, 608 N.E.2d 1284, 1287 (1993).  The trial court's finding that a name change was not in Lauren's best interests at this time is not against the manifest weight of the evidence.

The trial court found each party entitled to take Lauren as an exemption for federal and state income tax purposes in alternate tax years, Stacey in odd-numbered years beginning in 1997 and Matthew in even-numbered years beginning in 1998.  Matthew argues he should receive the exemption for Lauren in all years because his court-ordered child support provides for more than one-

half of the child's expenses.

Section 152(e)(2)(A) of the Internal Revenue Code (26 U.S.C. §152(e)(2)(A) (1994)) provides that the custodial parent is entitled to the deduction unless the custodial parent signs a written declara­tion that such custodial parent will not claim the child as a dependent for the tax year.  

This court has determined that section 152(e) does not deprive the Illinois trial courts of the discre­tion to allocate the tax exemption for the child to the noncustodi­al parent and direct the custodial parent to sign a declaration that he or she will not claim the dependency exemption.  
In re Marriage of McGarrity
, 191 Ill. App. 3d 501, 504, 548 N.E.2d 136, 138 (1989).  Under the Illinois Parentage Act of 1984 (Parentage Act), child support is set based on standards included in sections 505 and 505.2 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505, 505.2 (West 1996)).  750 ILCS 45/14(a)(1) (West Supp. 1997); 
In re Parentage of Janssen
, 292 Ill. App. 3d 219, 223, 685 N.E.2d 16, 19 (1997).  As in other child support issues, the standard of review is whether the allocation of the tax exemption amounted to an abuse of discretion or the factual predicate for the decision is against the manifest weight of the evidence.  See 
Gay v. Dunlap
, 279 Ill. App. 3d 140, 144-45, 664 N.E.2d 88, 92 (1996).

Matthew argues that his child support payments of $397 every two weeks ($860.17 per month) exceed one-half of the child's monthly expenses of $981.74 listed in Stacey's financial affidavit.  In addition, he argues that this list of expenses should be reduced because he was ordered to pay one-half of the day-care expenses, up to $200 per month, and one-half of all the child's medical expenses not covered by medical insurance, which he was also required to carry on the child.  However, on appeal, Matthew does not raise an issue concerning the propriety of these court-ordered payments.  Instead, he only challenges the allegation of the income tax exemption.  Stacey's affidavit also listed several other monthly household expenses:  utilities, $235.70; food, $681.83; cleaning and laundry supplies, $106.41; automobile expenses, $456.67, including gasoline, maintenance, loan payments and insurance; and mortgage and property taxes, $1,783.34.  

Financial responsibility for supporting a child is the joint and several obligation of each parent.  
In re Marriage of Butler
, 106 Ill. App. 3d 831, 836, 436 N.E.2d 561, 564 (1982); see also 750 ILCS 5/505(a) (West 1996) (either or both parents owing support may be ordered to pay).  Raising a child involves necessary expenses such as food, clothing, shelter, and medicine.  
In re Marriage of Raski
, 64 Ill. App. 3d 629, 631, 381 N.E.2d 744, 747 (1978).  Support includes the physical, mental, and emotional needs of the child.  750 ILCS 5/505(a) (West 1996).  Much of the custodial parent's contribu­tion to the care of the child is not conveniently reducible to financial figures relating only to the child.  The costs of maintaining a home, purchasing food for the family, laundering the family's clothing, and maintaining the family mode of transportation are necessary for the welfare of the child as part of an integrat­ed family unit.  In addition, the custodial parent expends time and energy in the care of the child.  This contribu­tion cannot be downplayed simply because it is not reducible to a financial figure.  See 
In re Marriage of Kern
, 245 Ill. App. 3d 575, 579, 615 N.E.2d 402, 405 (1993).

Section 505 of the Marriage Act creates a rebuttable presumption that a specific percentage of a noncustodial parent's income represents an appropriate award of child support.  
In re Marriage of Singleteary
, 293 Ill. App. 3d 25, 36, 687 N.E.2d 1080, 1087-88 (1997).  But simply paying that amount does not automati­

cal­ly entitle the noncustodial parent to an income tax exemption for the child.  Matthew has failed to prove that he actually makes a greater financial contribution to the support of the child than does Stacey.  The trial court apparently found their contributions to be equivalent, awarding each the exemption in alternate years.  This determination is neither against the manifest weight of the evidence nor an abuse of discretion.

Matthew next argues that the trial court erred in granting Stacey certain pregnancy expenses.  The trial court has the authority to order Matthew to pay "reason­able expenses *** related to the mother's pregnancy and the delivery of the child."  750 ILCS 45/14(a)(1) (West Supp. 1997).  Matthew was ordered to pay $5,298.17 as one-half of the total birth-related expenses.  Matthew does not challenge some of the expenses as not being reimbursable.  Of the amount he does challenge, Stacey identified $52.20 as medical insurance expense and $1,336.54 in pregnancy costs (maternity needs, $416.99; pregnancy/pre-baby education, $167.77; doctor and prescrip­tion, $276.21; and one-time items, $475.57).  Matthew argues some of these were not specifically identified and, therefore, were not reimburs­able.  Stacey provided an exhibit itemizing expenses (petitioner's exhibit No. 6) and testified (1) she went through the list eliminat­ing expenses not entirely related to the child's birth or shortly after her birth and (2) the amounts so related to birth or shortly thereafter were summarized in petitioner's exhibit No. 5B.  Matthew has raised no issue on appeal regarding the propriety of the admissi­bility of exhibit No. 5B or exhibit No. 6.  Nor does he point to any location in the record where he objected to the admissibility of exhibit No. 5B or 6 into evidence.  See 177 Ill. 2d Rs. 341(e)(6) (statement of facts in brief must refer to specific pages in the record), (e)(7) (discus­

sion of evidence in argument must contain citation to the record).  Nor does Matthew cite any legal authority regarding in what manner the evidence is deficient or that, on this evidence, the trial court could not make a finding as to the appropriateness of ordering reimburse­ment.  177 Ill. 2d R. 341(e)(7).  Any argument concerning the propriety of the trial court's ruling concerning the items listed in petitioner's exhibit Nos. 5B and 6 is deemed waived for purpose of appeal.

Matthew's main contention relates to the propriety of ordering him to pay one-half of the $5,584.10 in wages Stacey lost during her pregnancy and delivery.  Matthew argues that the lost wages are not a part of the expenses related to pregnancy and delivery under the statute.  Statutory construction is a question of law that this court considers 
de
 
novo
.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995).  The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature.  
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994).  Courts first look to the language of the statute to determine legislative intent.  
Zekman v. Direct American Marketers, Inc.
, 182 Ill. 2d 359, 368-69, 695 N.E.2d 853, 858 (1998).  The words of the statute are given their plain and commonly understood meanings.  
R.L. Polk & Co. v. Ryan
, 296 Ill. App. 3d 132, 140, 694 N.E.2d 1027, 1033 (1998).  When the meaning of the statute is clear, we need not look beyond its language and resort to aids for construction.   
Zekman
, 182 Ill. 2d at 369, 695 N.E.2d at 858; 
Solich
, 158 Ill. 2d at 81, 630 N.E.2d at 822.

Section 14(a)(1) of the Parentage Act uses the word "expenses."  In its ordinary meaning, "expense" not only includes monies spent, but may also include a "loss."  Webster's Third New Interna­tion­al Dictionary 800 (1993) (hereinafter Webster's).  A "loss" includes the act or fact of failing to gain or obtain.  Webster's 1338.  "Lost wages" are wages Stacey failed to gain or obtain and, in a nontechnical sense, may be included in expenses.  The statute does not define the term "expenses" as to exclude lost wages of the mother.  Nor did the legisla­ture expressly restrict expenses in section 14(a) of the Parentage Act to "out-of-pocket expenses," usually requiring an outlay of cash.  See Black's Law Dictio­nary 1102 (6th ed. 1990).  However, the legislature did qualify the expenses as "related to the mother's pregnancy and delivery of the child."  "Related" connotes a relationship or connection.  Webster's 1916.  In this context, "pregnancy" and "delivery" are medical terms.  "Delivery" refers to the act of giving birth.  Stedman's Medical Dictionary 453 (26th ed. 1995) (hereinafter Stedman's); Webster's 597.  "Pregnancy" is the female's condition between conception and birth.  Stedman's 1420; Webster's 1788.  Where technical terms are employed in a statute, they will be given their technical meaning if that is the context in which they are employed.  
Maiss v. Metropolitan Amusement Ass'n
, 241 Ill. 177, 181, 89 N.E. 268, 269 (1909); 
Depart­ment of Public Works & Buildings v. Wishnevsky
, 131 Ill. App. 2d 702, 704, 267 N.E.2d 355, 356 (1971); see also 
Galowich v. Beech Aircraft Corp.
, 92 Ill. 2d 157, 165-66, 441 N.E.2d 318, 321-22 (1982) (techni­cal meaning of "costs").

Therefore, the statute could be construed to allow Stacey to recover lost wages if the wages were lost as a result of her medical conditions of pregnancy and delivery, or not.  To that extent, the statute is ambiguous.  However, in construing statutes, courts presume that the legislature did not intend absurdity, inconvenience, or injustice.  
Baker v. Miller
, 159 Ill. 2d 249, 262, 636 N.E.2d 551, 557 (1994); 
Orr v. Edgar
, 298 Ill. App. 3d 432, 441, 698 N.E.2d 560, 567 (1998).  When two constructions of a statute are possible, one of which is absurd and illogical and the other reasonable and sensible, the absurd result is to be avoided.  
People v. Stanciel
, 153 Ill. 2d 218, 233-34, 606 N.E.2d 1201, 1210 (1992).

The time period for lost wages awarded was in great part for a time period after the birth of the child.  Stacey testified that her last full biweekly paycheck prior to Lauren's birth (August 10, 1995) was for the period ending July 14, 1995.  After that time, she was on half days up to the child's birth.  Following the child's birth, she was off work for eight weeks.  

The statute does not allow the imposi­tion of an award for mainte­nance of the mother.  It does, however, provide for an award of child support.  750 ILCS 45/14(b) (West Supp. 1997).  Indeed, if the appropri­ate factors are found, child support may be ordered retroactive to the date of the child's birth.  750 ILCS 45/14(b) (West Supp. 1997); 
Janssen
, 292 Ill. App. 3d at 221-23, 685 N.E.2d at 18-19.  The statute also expressly provides for enforce­ment through article X of the Illinois Public Aid Code (Code) (305 ILCS 5/10-1 
et
 
seq
. (West 1996)).  750 ILCS 45/14(g),(h) (West Supp. 1997).  Under the Code, the father is responsi­ble for the support of a child born out of wedlock, but not for the support of the child's mother.  
Cf
. 305 ILCS 5/10-2 (West 1996).  If a father can be ordered to pay child support retroactive to the date of the child's birth, ordering him to pay lost wages would be a form of mainte­nance for the mother.  Since the statute does not authorize an award of maintenance to the mother and the father would not be responsible to reimburse for public aid to support the mother, ordering the father to pay the mother's lost wages would be an inconsistent result.  Furthermore, since the legisla­ture could not have intended that result postdelivery, we conclude that the legisla­ture did not intend to provide an award of maintenance during pregnancy either.  We construe section 14(a)(1) of the Parentage Act as not authoriz­ing a recovery of the mother's lost wages as an expense related to the mother's pregnancy and the delivery of the child.  See 
In re Paternity of W.L.
, 259 Mont. 187, 191, 855 P.2d 521, 523-24 (1993); 
Bunge v. Zachman
, 578 N.W.2d 387, 389-90 (Minn. Ct. App. 1998); 
Gilpen v. Justice
, 85 Ohio App. 3d 86, 89, 619 N.E.2d 94, 96 (1993).  Therefore, that portion of the judgment ordering Matthew to pay one-half of Stacey's lost wages was improper as a matter of law.  However, the cause will be remanded to the trial court for a redetermination of the amount of the expenses of pregnancy and delivery because we are unable to ascertain from the record whether the trial court would have ordered Matthew to pay more of these expenses had lost wages not been awarded.

The final issue concerns visitation.  Matthew argues the trial court committed an abuse of discretion by (1) refusing to grant him the opportunity to care for the child when he was available and Stacey was working or on vacation and (2) not awarding more liberal visitation.  As to the first contention, Matthew cites no legal authority for the proposition that the noncustodial parent should be used in lieu of a baby-sitter whenever possible.  This violates Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)).

Under the Parentage Act, the father is not automatically entitled to visitation.  The standards for determining when visitation is in the child's best interests are those set out in section 602 of the Marriage Act (750 ILCS 5/602 (West 1996)).  When seeking visitation, the noncustodial parent has the burden of proof, and no presumption adheres that visitation is in the child's best interests.  
Department of Public Aid ex rel. Gagnon-Dix v. Gagnon
, 288 Ill. App. 3d 424, 427-28, 680 N.E.2d 509, 512 (1997). 

"A request for visitation might in some cases be a vindictive response to a request for child support, and the noncustodial parent's goal might not be the development of a rela­

tionship with the child, but the annoyance of the custodial parent.  Where the court deter­

mines that the noncustodial parent has a genuine interest in the child, however, the benefits of some sort of visitation may out­

weigh any accompanying disruption.  The court has discretion to grant or deny requests for visitation in Parentage Act cases based on its determination of the child's best interest."  
Gagnon
, 288 Ill. App. 3d at 428, 680 N.E.2d at 512.

In the original order of the trial court, Matthew was given visitation as follows:  (1) alternate weekends from 5 p.m. on Friday to 5 p.m. on Sunday; (2) one weekday evening per week (Matthew to designate whether Monday, Tuesday, Wednesday, or Thursday) from 5 p.m. to 8 p.m. until Lauren's fourth birthday and from 5 p.m. to 9 p.m. thereafter; (3) alternate holidays (New Year's Day, Easter, Memorial Day, July 4, Labor Day, Thanksgiving Day, Christmas Day) from 9 a.m. to 6 p.m.; (4) four hours on alternate birthdays of Lauren, unless the parties are able to agree other­wise; (5) Lauren is to be with Stacey on Mother's Day and with Matthew on Father's Day from 9 a.m. to 6 p.m.; (6) two work-related events per year for a maximum of five hours, with Matthew to give Stacey reasonable notice; and (7) two uninterrupted weeks during the summer upon 60 days' written notice to Stacey.  On rehearing, the trial court adopted the following stipulations of the parties:  (1) as to holidays falling on a weekend or the Monday following the weekend, holiday visits would be for the entire weekend as opposed to only the Monday, for example; (2) during the Christmas season, Matthew would have visits for three days, including Christmas day, but not Christmas Eve, in alternate years, and in the remaining alternate years, Christmas Eve and a three-day period that would not interfere with the child's schooling or Stacey's right to Christmas day; and (3) if Lauren's birthday fell on a nonschool day, Matthew may have Lauren for four hours, but if it fell on a school day, then Matthew may have Lauren for four hours on the day before or the day after her birthday, at his option.

Matthew argues the trial court should have followed Bergner's suggestion that, in addition to weekend visitation, overnight visitation during the week should have been allowed.  The trial court ascertains the best interests of the child.  The trial court need not accept the recommendation of an expert.  
In re Marriage of Petraitis
, 263 Ill. App. 3d 1022, 1031, 636 N.E.2d 691, 698 (1993); 
In re Marriage of Felson
, 171 Ill. App. 3d 923, 928, 525 N.E.2d 1103, 1106 (1988).  The appellate court will not overturn the custodial and visitation arrangements ordered by the trial court unless they are against the manifest weight of the evidence, manifestly unjust, or resulted from a clear abuse of discretion.  
In re Marriage of Ivey
, 261 Ill. App. 3d 200, 208, 632 N.E.2d 1121, 1126-27 (1994).  The denial of Matthew's request to baby-sit when he is available was not an abuse of discre­tion and the visitation order in this case is not against the manifest weight of the evidence, manifestly unjust, or an abuse of discre­tion.

That portion of the trial court's order directing Matthew to pay one-half of Stacey's lost wages is reversed, and the cause is remanded to allow the trial court to reconsider the amount of expenses of pregnancy and delivery which Matthew should be required to pay.  In all other respects, the judgment of the circuit court of McLean County is affirmed.

Affirmed in part and reversed in part; cause remanded.

COOK, J., concurs.

MYERSCOUGH, J., concurs in part and dissents in part.

JUSTICE MYERSCOUGH, concurring in part and dissenting in part:

I concur on issues (1), (2), and (4).  However, I respectfully dissent on issue (3).  Lost wages related to preg­nancy and delivery are recoverable under section 14(a)(1) of the Parentage Act.

"In an action brought within 2 years after a child's birth, the judgment or order may direct 
either
 
parent
 to pay 
the
 
reasonable
 
expenses
 
incurred
 
by
 
either
 
parent
 
related
 
to
 
the
 
mother's
 
pregnancy
 
and
 
the
 
delivery
 
of
 
the
 
child
." (Emphasis added.) 750 ILCS 45/14(a)(1) (West Supp. 1997).

See also 
In re Grosfelt
, 718 S.W.2d 670, 672 (Tenn. Ct. App. 1986) (mother's lost income reimbursed); 
Edwards v. Sadusky
, 4 Ohio App. 3d 297, 300, 448 N.E.2d 506, 509 (1982) (award of mainte­nance for six-week absence from work due to pregnancy, child birth, and postna­tal recovery); 
In re Paternity Petition of Gladys C.
, 61 Misc. 2d 381, ___, 383-84, 305 N.Y.S.2d 69, 72 (1969) (cost of therapeutic abortion can be awarded as "rea­

sonable expense" in connection with pregnancy); 
Anonymous v. Anonymous
, 48 Misc. 2d 794, ___, 265 N.Y.S.2d 827, 828 (1965) (necessary expens­es in connection with confinement and recovery include psychiat­ric care); 
Burke v. Rivo
, 406 Mass. 764, 767-68, 551 N.E.2d 1, 3 (1990) (wrongful pregnancy actions permit recov­

ery for medical expenses, pain and suffering, and loss of wages and services during pregnancy, delivery, and postnatal recovery); 
In re Adoption of Alyssa
, 131 Misc. 2d 755, 756, 501 N.Y.S.2d 595, 596 (1986) (expenses incidental to birth or pregnancy include rent, food, purchase of furniture, utilities, and other living expenses).

The recovery of lost wages in this limited context is not an award of maintenance but more in the nature of a payment of disability benefits.  See, 
e.g.
, the State Universi­ties Retirement System, where pregnancy and childbirth are considered a disability.  40 ILCS 5/15-150 (West 1996).  Due to her pregnan­

cy and delivery, Stacey was unable to work to earn money; she was disabled.  In addition, under the Family and Medical Leave Act, an employee is entitled to a total of 12 administrative workweeks of leave for, among others, "birth of a son or daughter of the employee and in order to care for such son or daughter."  5 U.S.C. §6382(a)(1)(A) (1994).  

The plain language of the statute permits recovery of reasonable expenses related to the mother's pregnancy and deliv­

ery from 
either
 parent.  So if, in this case, the mother returned to work and the father stayed at home and cared for the newborn, the mother would be responsible for half of the father's lost wages, as they were related to the pregnancy and delivery of the child.  However, the mother in this case lost wages, not the father.  

As a result of her pregnancy and delivery, Stacey lost wages for the time period she was unable to work.  Not reimburs­

ing her for those lost wages in effect penalizes her for the pregnancy and birth.  During the time that she was unable to work, she still incurred her normal expenses--food, rent, utili­

ties--while additionally she incurred medical expenses as a result of the pregnancy and birth.  Requiring the father to be responsible for half of this loss is not unreasonable, and to require the mother to bear the entire loss 
is
 unreasonable.    Moreover, nothing precludes the Department of Public Aid (Depart­

ment) from collecting from the father payment of reasonable expenses related to pregnancy and delivery.  Construing the paternity statute to include lost wages does not lead to an absurd result.  

Nowhere in the Parentage Act does the legislature prohibit the award for income lost due to illness or disability related to pregnancy.  In fact, the Parentage Act reflects the legislative public policy of preventing the unmarried mother and the child from becoming wards of the state.  The court may not accept paternity settlements unless:

"[T]he court is satisfied that the best inter­

ests of the child and of the parties will be served by entry of an order incorporating the set­tlement, and 
if
 
the
 
court
 
is
 
satis­fied
 that the financial security of the child is ade­

quately provided for and 
that
 
the
 
child
 
and its
 
mother
 
are
 
not
 
likely
 
to
 
become
 
public charges
."  (Emphasis added.)  750 ILCS 45/12.1 (West 1996).

Moreover, if the legislature wants to prohibit the reimbursement of lost wages, it does so quite effectively.  For instance, in the Adoption Compensation Prohibition Act, the legislature clearly delineated reasonable living expenses and excluded lost wages:

"'Reasonable living expenses' means the reasonable costs of lodg­ing, food, and cloth­

ing for the biological parents during the period of the biological mother's pregnancy and for no more than 30 days after the birth of the child.  The term does not include expenses for lost wages, gifts, educational expenses, or other similar expenses."  720 ILCS 525/4.1(a) (West 1996).

The legislature did not so limit the recovery of expenses here.  Requiring the father to pay these costs is in keeping with the public policy set forth in the Parentage Act.  Moreover, the language in the statute is permissive.  In fact, the trial court is not required to award 
any
 expenses.  In this case, the trial court did not abuse its discretion.  The trial court considered the relative income of the parties and split the costs of preg­

nancy and delivery, including the mother's lost wages, in half.  

The majority opinion is erroneous in its reasoning when it states that the Parentage Act does not allow the imposi­tion of lost wages and that the Parentage Act expressly provides for enforcement through article X of the Code (305 ILCS 5/10-1 
et
 
seq
. (West 1996)).  750 ILCS 45/14(g), (h) (West 1996).  The Parentage Act's only reference to the Code merely adds a 20% charge on past-due child support that is to be imposed in accor­

dance with the Code and requires the trial court to include in its support order a provision requiring the father to notify the Department of new employers.  The Code has no other bearing on the Parentage Act.  The absence of any mention in the Code of a father reimbursing the Department for support to the mother is irrelevant to the interpretation of the Parentage Act.  In fact, the Code likewise makes no mention of reimbursement for any other expenses relating to pregnancy and delivery, such as hospital bills, clearly recoverable under the Parentage Act.  Therefore, the Code has no bearing on this issue.  For these reasons I would affirm the trial court.