# Illinois Official Reports

## Appellate Court

---

*In re Marriage of Pasquesi*, 2015 IL App (1st) 133926

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ROBERTA PASQUESI, Petitioner-Appellee, and JOHN PASQUESI, Respondent-Appellant. |
| District & No. | First District, Third Division<br>Docket Nos. 1-13-3926, 1-14-0109 cons. |
| Filed | June 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-D-3759; the Hon. Debra D. Walker, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Steven Wittenberg and David Zwaska, both of LeVine, Wittenberg, Shugan, & Schatz, of Tinley Park, for appellant.<br><br>Paul L. Feinstein, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Roberta Pasquesi and respondent John Pasquesi incorporated a marital settlement agreement (MSA) into their divorce judgment. The MSA required John to deposit $90,000 in a trust from which Roberta, as trustee, was to withdraw John's monthly child support obligation and his 50% share of child-related expenses. The MSA established the trust for 24 months and allowed for review for replenishment on or after the 24 months. Shortly after the 24 months expired, Roberta filed a petition to replenish the trust through June 2013 and to establish John's current child support obligation. John also filed a petition to set child support. After several days of testimony, the circuit court ordered John to replenish the trust at a rate of $12,000 per year, determined John's current and retroactive child support obligation, as well as his past-due child-related expenses obligation, and granted Roberta the tax exemptions for the parties' dependent children.

¶ 2    John asserts the trial court abused its discretion in: (i) ordering him to replenish the trust, because Roberta, an interested party, is the trustee and there was no evidence to support replenishment; (ii) calculating his retroactive child support obligation from February 1, 2012 to August 12, 2012, because he had no income at that time; (iii) allocating the dependency exemptions to Roberta because he could have benefitted from them; and (iv) ordering him to pay $12,464 in past-due child-related expenses. We affirm. The circuit court acted within its discretion in ordering John to replenish the trust because the parties' MSA named Roberta as trustee and John willfully refused to pay nonmedical expenses that were not in dispute. The circuit court also did not abuse its discretion in calculating John's retroactive child support for February 1, 2012 to August 12, 2012, where the record did not show a change in circumstances, in permitting Roberta to claim all four children as dependents on her taxes as provided in the MSA, or in relying on Roberta's calculation in ordering John to pay $12,464 in past-due child-related expenses.

¶ 3                              BACKGROUND

¶ 4    Roberta and John Pasquesi married on September 22, 1990. The couple had four children. Two of the children are minors; one became emancipated in 2011 and another in 2013. On January 26, 2010, the trial court entered a judgment for dissolution of marriage, incorporating the parties' MSA. Regarding child support, the MSA states as follows:

    "4.02 As and for child support paid by John to Bobbie on behalf of the children, the parties agree as follows: John shall deposit the sum of $90,000 (Ninety Thousand Dollars) in the name of Roberta (Bobbie) Pasquesi as trustee for the benefit of the children pursuant to 750 ILCS 5/40 Sec. 503(g) by depositing $50,000 (Fifty Thousand Dollars) on or before February 15, 2010 and $40,000 (Forty Thousand Dollars) on or before February 1, 2011. If John fails to deposit said sums by the dates delineated then John shall be responsible for all of Bobbie's reasonable attorneys fees and costs expended to enforce this provision. ***

                                  * * *

    This fund is established to secure and to pay previous and ongoing child support obligations through 1/31/12. The ongoing child support obligation consists of child support of $2,000 (Two Thousand Dollars) per month, extracurricular expenses,

unreimbursed medical, dental and counseling expenses (except for extraordinary unreimbursed expenses as defined in paragraph 6.02 for which John shall be responsible for one-half and pay said extraordinary expenses within thirty days of notification which includes bills, EOB and proof of payment and medical and dental health insurance premiums as they relate to the children. This fund is designed for a twenty four month period and shall be subject to court review on or after February 1, 2012 for replenishment or before said date if John commences to earn income greater than $60,000 net income as defined by Section 505 per annum prior thereto. The $2,000 per month child support payment is based upon an imputed income of $60,000 net income as defined by Section 505 per annum. John's responsibility for extracurricular expenses, ordinary unreimbursed medical, dental and counseling expenses and health insurance premiums are deemed prepaid through 1/31/12 and Bobbie may request to modify only the child support provision during the twenty four month period.

\* \* \*

After twenty four months, John shall be responsible for one-half of unreimbursed medical and dental expenses, one-half of health insurance premiums as they relate to the children, one-half of counseling for the children, and one half of extracurricular activities."

¶ 5    As to "additional child-related payments," the agreement provides:

"6.01 Bobbie agrees to and shall maintain for the children current or comparable medical and dental insurance.

6.02 Commencing on February 1, 2012, each party shall pay for fifty percent (50%) of all insurance premiums as they relate to the children, uncovered or unreimbursed medical or dental expenses incurred on behalf of a child (except for extraordinary unreimbursed for which each party shall have an equal obligation immediately). The parties agree that they shall not incur any expense outside of the insurance network except if such limitation would jeopardize the life or health of a child. \*\*\* If the parties are unable to resolve an issue regarding a medical expense, either party may submit the issue to a court upon proper notice, petition, and hearing.

6.03 The provisions of paragraphs 6.01 through 6.02 shall be in effect until a child's emancipation as defined in paragraph 4.03 of this Agreement or, if he is attending college and the policy allows for coverage, upon the first to occur of his graduation from college or his obtaining age twenty three (23)."

¶ 6    The agreement also provides that the parties would split the exemptions for the four dependent children in the 2009 and 2010 tax years, and that Roberta could claim all dependency exemptions in future years.

¶ 7    As the circuit court stated, John did not timely fund the trust but instead made periodic deposits until reaching $90,000 in funding in March 2011. From the trust, Roberta withdrew $2,000 per month in child support and obtained reimbursement for John's share of certain child-related expenses for two years. On January 9, 2012 Roberta filed a petition seeking replenishment of the trust under section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Act) and an order establishing John's current child support obligation for the parties' three minor children at 32% under section 505(a)(1) of the Act (750 ILCS 5/503(g),

- 3 -

505(a)(1) (West 2012)). (The eldest child had already turned 18 years old and completed high school.) In her petition, Roberta alleged John had a 2010 adjusted gross income of $176,685.

¶ 8        John also filed a petition asking that child support be set at 32% of his income for three children. John asserted that his only income from employment in 2011 was a commission check for $36,500, and he requested that 32% of that commission and any additional commissions or income he received be set as his child support obligation. John also filed a reply to Roberta's petition asserting, in part, that the section 503(g) trust did not need to be replenished if the court set his child support obligation at 32% of his income and commissions.

¶ 9        On February 28, 2012, the circuit court ordered John to pay $2,500 per month in temporary child support until further order of the court. John failed to make child support payments or reimburse Roberta for $6,069.57 in child-related expenses, and on April 30, 2012, Roberta filed a two-count petition for an adjudication of civil contempt. After several continuances, a trial was held on seven nonconsecutive days between August 1, 2012 and June 18, 2013. The trial court heard testimony from both parties and admitted into evidence 23 exhibits concerning the parties' financial status and disputed child-related expenses. The testimony was memorialized in a stipulated bystander's report and not a verbatim transcript. See Ill. S. Ct. R. 323(c) (eff. Dec. 13, 2005).

¶ 10       Roberta testified she had received one child support payment since February 1, 2012 in the amount of $2,500 and that John currently owed $15,500 in child support. She also testified that since February 1, 2012, she had incurred $7,582.47 in child-related expenses, that John is responsible for 50%, but that he has not responded to her requests for reimbursement.

¶ 11       John testified that he did not have the money to pay child-related expenses since February 1, 2012, claiming to have $400 in cash and no other money aside from retirement accounts. John said he lives with his parents, because he cannot afford to live on his own, and he borrowed from credit cards and friends to pay for his expenses. John testified that he worked at Marcus and Millichap, a real estate investment firm, beginning in 2008. John's total compensation from the firm was commissions-based, and John said he earned no commissions between 2008 and November 2011. On December 15, 2011, John received a commission check in the amount of $36,500. John asserted he was personally responsible for paying numerous expenses, including travel, advertising, and cell phone use, and that it cost him more to do business than he got paid. John's tax returns for 2010 and 2011 show that he had no income from Marcus and Millichap and suffered business losses for both years. His tax returns also show that in 2010 and 2011, John took distributions from his individual retirement account (IRA) in the amounts of $191,088 and $218,063, respectively. The record is unclear, but apparently John left Marcus and Millichap sometime in late 2011 or early 2012 and worked for himself until August 2012, when he took a job at Arlington Computer Products, Inc., with a base salary of $8,000 per month, plus commission.

¶ 12       John acknowledged the proceedings were acrimonious, particularly regarding the money paid out of the section 503(g) trust for reimbursement of child-related expenses. John objected to reimbursing Roberta for certain medical expenses that were not properly documented or were double-billed, school-related expenses, which were supposed to be paid out of a 529 educational account, and other expenses, such as driver's education, which he deemed unnecessary. The parties submitted a spreadsheet to the court with an item-by-item list of disputed child-related expenses, and John's reason for objecting to them. According to the bystander's report, at the end of the hearing, the circuit court advised both parties to submit

their respective position papers on child support calculations and disputed items and advised them to "build their closing argument around those items."

¶ 13 On November 15, 2013, the trial court entered its judgment. As to John's current child support obligation, the court noted John is a commercial real estate broker but "had not been earning any income for a couple of years but was living off assets." The court further noted that after a lengthy period of losses, John started a new, full-time job on August 13, 2012, with a gross annual salary of $96,000 and a net monthly income of $5,307. Based on the statutory requirement for two minor children, the court ordered John to pay 28% of his monthly income, as well as 28% of any bonuses or commissions as child support. After July 10, 2015, John's child support obligation would drop to 20% of his net income, after the parties' third son turned 18 and graduated from high school. The court also maintained the status quo under the MSA, by permitting Roberta to keep all four dependency tax exemptions.

¶ 14 Next, the trial court addressed John's retroactive child support obligation from February 1, 2012 to November 30, 2013. The court divided those months into three different time periods, based on changes in John's employment and salary and the number of dependent children. John only objects to the court's finding regarding the period from February 1, 2012 to August 13, 2012. The court stated that during this time period "nothing had really changed since the MSA, based upon the needs of the children, [the] imputed $60,000 in net income to Mr. Pasquesi and *** the [section] 503(g) trust, except that Justin had been emancipated." The court, rather than basing child support during this period on John's IRA withdrawals, determined "it is fair and equitable to simply maintain the status quo during this timeframe based upon a guidelines percentage of 32%." Thus the court found that John should have continued to pay $1,600 per month in child support for a total of $10,400 during this time period. The court gave John credit for $4,931 and ordered him to pay the difference–$5,469, plus statutory interest.

¶ 15 The circuit court made findings regarding amounts John owed for unreimbursed child-related expenses dating from February 1, 2012. As to the section 503(g) trust, the court noted that child support would now be withdrawn from John's paychecks, alleviating the need to deposit sufficient funds in the trust to cover that obligation. The trust included funds for reimbursing medical, dental, and counseling services, as well as extracurricular activities and health insurance premiums. The court found that John "has demonstrated a continual pattern and practice of protesting and delaying reimbursement for these child-related expenses, and this posture results in Ms. Pasquesi having to engage in endless hours of document-gathering and bookkeeping to satisfy him. Therefore, it is fair and equitable to replenish the [section] 503(g) trust upon which Ms. Pasquesi shall be able to draw in order to be reimbursed for Ms. Pasquesi's share of the above child-related expenses." The court ordered John to deposit $12,000 into the trust by December 31, 2013 and again by December 31, 2014. The court also ordered John to continue to make deposits by the end of each year until each son has graduated from college or reached the age of 23, noting that the amount will decrease to $7,000 on December 31, 2015 and $3,000 on December 31, 2018.

¶ 16 Finally, the court held John in contempt. The court stated:

"This Court specifically finds that he did have the ability to timely pay for his court-ordered support (albeit via a temporary order) and for his share of the unreimbursed child-related expenses. Mr. Pasquesi withdrew very large sums of money (over $197,000 over a 2-year period) from his retirement accounts to pay his

- 5 -

living expenses according to his testimony. Mr. Pasquesi was living with his parents during this time. He was also making large payments on his credit cards and other loan repayments. He was spending enormous amounts of money on his sons' entertainment expenses and on his own shoes and clothes, but at the same time, he was refusing to reimburse Ms. Pasquesi for necessities for the children. *** Additionally, Mr. Pasquesi admitted that he did not pay for items to which he had no objection. Mr. Pasquesi has still failed to pay for those items he agreed to pay. This court finds that Mr. Pasquesi was without compelling cause or justification and was wilful and contumacious in his failure to pay Ms. Pasquesi for the child support and unreimbursed child-related expenses."

¶ 17    The court ordered the parties to tender their calculations of retroactive child support and statutory interest. On December 11, 2013, the trial court ordered John to pay $5,421 in unpaid child support that had accrued from February 1, 2012 to November 30, 2013, plus $839 in interest and $12,464 in past-due child-related expenses. We have consolidated John's appeal of the November 15, 2013 and December 11, 2013 orders.

¶ 18                                    ANALYSIS
¶ 19                   Replenishment of the Section 503(g) Trust
¶ 20    John first contends the trial court erred in ordering him to replenish the section 503(g) trust. John does not quibble with the amount the court determined should be deposited in the trust but, rather, contends that the trial court should not have ordered replenishment because Roberta, an interested party, is named as trustee, and because evidence did not weigh in favor of the order.

¶ 21    Section 503(g) of the Act provides, in pertinent part, as follows:
        "The court[,] if necessary to protect and promote the best interests of the children[,] may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor *** child of the parties." 750 ILCS 5/503(g) (West 2012).

¶ 22    We review the decision to impose a trust under section 503(g) of the Act under an abuse of discretion standard. *In re Marriage of Bates*, 141 Ill. App. 3d 566, 573 (1986). The appointment of a fit and proper person to be trustee involves a decision within the trial court's broad discretion. *In re Marriage of Vucic*, 216 Ill. App. 3d 692, 702 (1991). Generally, "interested persons should not be appointed trustee of a trust. [Citation.]" *Id*. But, in exerting its appointment power, "the court should consider all the circumstances bearing on the matter. [Citation.]" *Id*.

¶ 23    John contends *Vucic* supports his argument that Roberta should not be named as trustee. In *Vucic*, the trial court established a trust for payment of child support and child-related expenses while the respondent father was in prison. The court appointed respondent's ex-wife and the mother of the child as trustee. The trust was to terminate when the child reached majority, graduated from high school, or graduated from college, whichever came last. After the trust terminated, all remaining funds were to be returned to the child's father. *Id*. at 697-98. The appellate court found that the circuit court erred in naming respondent's ex-wife as trustee, because her interests are "naturally divergent from that of her now former husband." *Id*. at 702. To assign her as "gatekeeper for the trust fund, the corpus of which is to be returned to [her

former husband], is wrong on its face and is an invitation for future disputes. A neutral and impartial third party should have been appointed by the trial court as trustee." *Id.*

¶ 24　　John contends that, similarly, Roberta is an interested party who should not be the trustee because remaining funds revert to him on termination. *Vucic*, however, is distinguishable in one key respect. The circuit court did not establish the trust or appoint Roberta as trustee. The parties agreed in their MSA to establish the section 503(g) trust and to name Roberta as trustee. Thus, unlike *Vucic*, the circuit court did not unilaterally decide to appoint Roberta as trustee but was adhering to the express terms of the MSA. John counters, however, that because the circuit court's order addressed "replenishment" of the trust rather than "establishment" of the trust and involved the return of any remaining funds, the MSA does not control and he can object to Roberta serving as trustee. But John waived the issue by raising it for the first time on appeal. See *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 85 (issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal). Thus, we refuse to consider this argument of John's.

¶ 25　　John also contends the circuit court erred in finding that his failure to reimburse Roberta for certain child-related expenses after February 1, 2012 weighed in favor of replenishing the section 503(g) trust because the parties' MSA provided that either party could submit to the court for hearing any unresolved issue regarding a medical expense. John had numerous objections to certain child-related expenses and was waiting for the trial court to adjudicate the issue before reimbursing Roberta. Thus, John asserts, he was justified in withholding reimbursement pending review and, the circuit court should not have used his nonpayment as grounds for ordering him to replenish the trust.

¶ 26　　While the MSA does permit the parties to wait for the court to resolve issues regarding medical expenses, the trust was established to pay for child support (which is no longer an issue because it will be coming directly from John's paychecks) as well as John's 50% share of numerous other expenses, including dental and counseling fees and extracurricular activities. Based on the evidence presented during the hearing, aside from disputed medical expenses, John asserted responsibility for a number of these expenses but still but refused to pay them. Thus, the circuit court was well within its discretion when it ordered him to replenish the section 503(g) trust after finding he had willfully refused to pay the nonmedical expenses.

¶ 27　　　　　　　　　　　　Retroactive Child Support Obligation

¶ 28　　John next contends the trial court abused its discretion in calculating his child support obligation from February 1, 2012 to August 13, 2012, at a rate of $1,600 per month for a total of $10,400 for that time period. John asserts the trial court ignored the evidence showing that in 2012, he lost $1,629 from his sole proprietorship and had no income until he started working for Arlington Computer Products, Inc., in August 2012, after the time period being considered.

¶ 29　　Under the Act, the calculation of child support depends on the noncustodial parent's net income. 750 ILCS 5/505(a)(1) (West 2012). For three children, the guidelines specify a minimum child support payment of 32% of the supporting parent's net income. *Id.* A court applies the guideline amount set out in the Act unless it finds that the application of the guidelines is inappropriate after considering the child's needs and resources, the needs and resources of both parents, the standard of living the child would have enjoyed had the marriage not been dissolved and the physical and emotional condition of the child as well as his educational needs. 750 ILCS 5/505(a)(2) (West 2012); see also *In re Marriage of Sweet*, 316

Ill. App. 3d 101, 108 (2000). "If the net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case." 750 ILCS 5/505(a)(5) (West 2012). Courts may both look to past earnings to determine an appropriate income level (*In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 706 (2006)) and compel a party to pay child support at an imputed income level commensurate with their earning potential (*In re Marriage of Gosney*, 394 Ill. App. 3d 1073, 1077 (2009)). "The findings of the trial court as to net income and the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Breitenfeldt*, 362 Ill. App. 3d 668, 675 (2005). An abuse of discretion occurs where no reasonable person would agree with the position adopted by the circuit court. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641, 646 (2009).

¶ 30 In addressing the period from February 1, 2012 until August 13, 2013, coinciding with the termination of the section 503(g) trust until John began working at Arlington, the trial court decided that because "nothing had really changed since the MSA" except Justin's emancipation, it would continue to base its child support calculation on John's imputed income of $60,000, as agreed to in the MSA. The court stated that "[r]ather than basing child support during this period on Mr. Pasquesi's IRA withdrawals, *** it is fair and equitable to simply maintain the status quo during this time period based upon a guideline percentage of 32%." John contends, however, circumstances had changed because during that time period, he was working as a sole proprietor and had no income. Based on John's testimony, however, the circuit court was correct in finding that nothing had changed and in maintaining the status quo. According to the stipulated bystander's report, between 2008 and November 2011, during that time he was paying child support based on an imputed income of $60,000, John earned no commissions from Marcus and Millichap. He testified that he was paying more in costs than he was earning, which is reflected on his 2010 and 2011 tax returns. Thus, although John may have been operating at a loss while working for himself, he was also operating at a loss while working for Marcus and Millichap. In short, his financial circumstances did not change and may have slightly improved, because it appears his business losses might have been lower while working for himself. Thus, we find no error in the trial court's decision to maintain the status quo and its calculation of past-due child support for this period at a rate of 32% of a $60,000 imputed income.

¶ 31                                         Dependency Exemption

¶ 32 John argues that the circuit court erred in allowing Roberta to claim all four children as dependents on her taxes. In his brief, John does not suggest how the dependency exemptions should have been allocated but simply asserts that the trial court abused its discretion in awarding all four exemptions to Roberta. An income tax dependency exemption should be awarded to the parent who will contribute the majority of the child's support. *In re Marriage of DiFatta*, 306 Ill. App. 3d 656, 663 (1999). Supporting a child involves necessary expenses, such as food, clothing, shelter, and medicine, along with meeting the child's physical, mental and emotional needs. *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 901 (1999). "Much of the custodial parent's contribution to the care of the child is not conveniently reducible to financial figures relating only to the child." *Id*. at 901-02 (listing other contributions, such as purchasing food for the family, laundering family clothing, and expending time and energy in the care of the child). Simply paying the statutory child support amount does not automatically entitle the

noncustodial parent to the income tax exemption for the child. *Id*. at 902. The award of an income tax dependency exemption will not be reversed absent an abuse of discretion (*In re Marriage of DiFatta*, 306 Ill. App. 3d at 663), and we review the facts predicating the decision under the manifest weight of the evidence standard. *Stockton*, 305 Ill. App. 3d at 901.

¶ 33 In their MSA, the parties agreed to split the dependency exemptions for 2009 and 2010 and Roberta was then to have all four exemptions for the years going forward. The trial court acknowledged, as John asserts, that he is now employed and could benefit from the dependency exemptions. But the court found that because Roberta is receiving less child support than was previously ordered and is the sole custodian of the children, she should continue to receive dependency exemptions for all four children. Nothing in the record indicated the court's finding was an abuse of discretion.

¶ 34                                            Past-Due Child-Related Expenses

¶ 35 Finally, John argues the circuit court erred in ordering him to pay $12,464 in past-due child-related expenses. Specifically, John asserts the trial court's finding turns on its erroneous conclusion that he stipulated to Roberta's calculation of $12,464 by failing to submit a calculation of his own. He refers to the language in the December 11 order that because "[o]nly the Petitioner submitted a calculation for past due child related expenses *** this Court believes that Respondent is stipulating to that calculation of $12,464." John asserts that at the end of the November 15, 2013 hearing, the trial court ordered the parties to tender to the court "his/her calculation of retroactive child support and statutory interest on or before December 6, 2013, so that the Court may enter appropriate judgment." He contends the court did not ask the parties to submit a calculation of past-due child-related expenses, an issue the parties strongly disagreed on, and thus the trial court erred in finding that his failure to submit a calculation amounted to a stipulation to Roberta's calculation.

¶ 36 An appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). An incomplete record on appeal, in most cases, compels us to presume that the order entered by the trial court conformed with the law and had a sufficient factual basis. *Id.* Doubts that arise from the incompleteness of the record will be resolved against the appellant. *Id.* at 392.

¶ 37 While the November 15, 2013 order requests the parties tender their calculations for retroactive child support and statutory interest, the stipulated bystander's report states that at the end of the hearing, "the court advised both parties to submit their respective position papers on child support calculations *and disputed items*." (Emphasis added.) This suggests the court wanted calculations of both child support and amounts owed on past child-related expenses, which John acknowledges were "hotly contested." In the absence of a complete record of proceedings, we must presume the trial court's order had sufficient factual basis and any doubts will be resolved against the appellant. Further, the trial court heard days of testimony about disputed child-related expenses and the parties submitted a mutual joint spread sheet of expenses to the trial court showing what expenses John agreed to pay and which he disputed. Based on this evidence, we cannot find that the trial court abused its discretion in finding that John owed $12,464 in past-due child-related expenses.

¶ 38 We affirm the circuit court.

¶ 39 Affirmed.