*In re* MARRIAGE OF FRED H. MILLER, Petitioner-Counterrespondent-Appellant, and SUSAN F. MILLER, Respondent-Counterpetitioner-Appellee.

First District (3rd Division)   No. 78-821

Opinion filed May 7, 1980.

Sanford Kirsh, of Kirsh, Nadler & Berman, Ltd., of Chicago, for appellant.

Kenneth J. Sophie, Jr., and Michael T. Norris, both of Facchini & Minton, of Chicago, for appellee.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

This action was commenced when Fred H. Miller filed a complaint for divorce. Susan F. Miller, the appellee, filed her answer and countercomplaint for divorce or, in the alternative, separate maintenance and other relief.[1] The Circuit Court of Cook County dismissed the appellant's complaint and granted the appellee's counterclaim for dissolution of the marriage. The appellant was ordered to convey his interest in the marital home to the appellee in lieu of maintenance and to pay a portion of the appellee's attorney's fees. Upon the denial of appellant's post-trial motion, this appeal was taken.

The appellant does not dispute the trial court's findings or judgment regarding the dissolution of the marriage. He appeals from that portion of the judgment order concerning the distribution of marital property and the award of attorney's fees. Specifically, the appellant argues that the trial judge abused his discretion in (1) awarding the marital home solely to the appellee, (2) awarding attorney's fees to appellee's counsel and (3) failing to require appellee to comply with a notice to produce. The appellant also contends that he was deprived of a fair trial because of the conduct of the trial judge.

■■ The appellee contends that this appeal should be dismissed for lack of jurisdiction due to the appellant's failure to comply with Supreme Court Rules 323 (time for filing report of proceedings) and 326 (time for filing record on appeal)(Ill. Rev. Stat. 1977, ch. 110A, pars. 323, 326). However, Supreme Court Rule 301 (Ill. Rev. Stat. 1977, ch. 110A, par. 301) provides that, other than the filing of a notice of appeal, no step is jurisdictional. Therefore, having jurisdiction, we proceed to the merits of this appeal. *O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 327 N.E.2d 236.

The appellant's first argument on appeal is that the trial court abused its discretion in awarding the marital home solely to the appellee because the parties were basically in the same financial position, and the home was acquired during the marriage. At the time of trial, the appellant was 66 years of age and retired. He was receiving a monthly pension and social security benefits in the amount of $545. After retirement he continued to work part-time doing manual labor but voluntarily terminated this employment each year when his earnings reached $3,000, the amount a

---

[1] These actions were filed under the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 1 *et seq.*). At the time of trial, the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) was in effect. This cause is governed by the provisions of the new act (Ill. Rev. Stat. 1977, ch. 40, par. 801(b)).

retiree could earn annually and still receive full social security benefits. The appellant denied having any bank accounts and admitted surrendering a $5,000 life insurance policy for $1,900, in violation of a court order. He testified he used the proceeds to pay back taxes and for auto repairs. The appellant estimated his expenses to be $375 per year for automobile insurance and approximately $416 per month for rent, food, utilities, telephone, car payments and entertainment.

The appellee, also 66 years of age at the time of trial, was a retired clerical worker. She had worked for 43 years and was receiving a total of $456 per month from her social security and pension benefits. Her expenses included $1,100 per year for real estate taxes, $300 per year for house insurance and approximately $560 per month for food, medical, utilities, transportation, clothing and incidental expenses. On cross-examination, the appellee denied having any savings accounts in her name. However, she admitted that in 1976 an account existed in her name in an amount of $8,400, but testified that the money was transferred in June of that year to a joint account in her name and her daughter's. The appellee denied opening other accounts in her name but said her daughter had opened another joint account. She stated all the money in all accounts belonged to her daughter and all of the banking transactions involving these accounts were done by her daughter and not at her (appellee's) direction. On re-cross-examination, the appellee stated $1,500 of the $8,400 was money she inherited upon her sister's death. She admitted that some of her paychecks had been deposited in the savings account by her daughter but that she had received cash from her daughter for the amount of the checks.

The appellee's testimony regarding the savings accounts was supported by her daughter's testimony. June Miller, the adult daughter of the parties to this suit, testified that most of the money in the accounts was hers, which she obtained from the sale of her tavern business, and that she withdrew money from one account and put it in another. She admitted giving both of her parents cash for their employment checks and subsequently depositing those checks in her savings accounts.

The marital home was purchased by the parties in 1966. The parties lived together in the home with their daughter until 1976 when the appellant left. The mortgage on the property at the time of purchase was approximately $19,000. It is undisputed that the appellee took care of the household finances and would pay the monthly bills from her employment check and the check the appellant received from his primary job which he gave to her. The appellant testified that he continued to give the appellee his check until May 1976. It is also undisputed that the parties' daughter, June, paid $17,000 towards the mortgage from 1972 to 1976. June Miller testified that she made the

mortgage payments because she wanted her parents to have a paid-up home. When asked by the trial judge whether she expected to be repaid the $17,000, she responded affirmatively and said she expected repayment out of the proceeds of the house when it was sold. She said she had this agreement with her mother but not with her father.

Appellee valued the marital home at approximately $45,000 to $50,000. At the conclusion of the testimony the court allowed the appellant's counsel to make an offer of proof that an appraiser, if called, would have testified that the value of the marital home was $63,000.

The judgment of dissolution of marriage contained several findings of fact, including the following:

> "5. That Sue F. Miller is unemployed and that Fred H. Miller has an income of approximately ninety-five hundred forty ($9540.00) dollars per annum;
>
> 6. That it was impossible for Sue F. Miller to have accumulated eight thousand ($8,000.00) dollars on the representation of her represented earnings, which are not denied or contradicted;
>
> 7. That Fred H. Miller's ability to pay Sue F. Miller any alimony or maintenance is impaired;
>
> 8. That [appellant], by violating injunctions, necessitated additional legal time to be spent in this case by [appellee's] counsel;
>
> * * *."

The trial court ordered appellant to convey his interest in the marital home to appellee in lieu of maintenance. The court accepted the valuation of the property at $63,000 and stated "the [appellee] shall then assume the obligation of paying June Miller whatever amount June seeks to recover * * *."

Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)) (Dissolution Act) provides for the division of marital property, without regard to marital misconduct, in just proportions according to relevant factors such as: "(1) the contribution or dissipation of each party in the acquisition * * * of the marital and non-marital property * * *; (2) the value of the property set apart to each spouse; (3) the duration of the marriage; * * * (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; * * * (9) whether the apportionment is in lieu of or in addition to maintenance; and (10) the reasonable opportunity of each spouse of future acquisition of capital assets and income."

The appellant contends that the award of the marital home to the appellee was not a division "in just proportion" as required by law, but, rather, an attempt to punish him for marital misconduct. He argues that

both parties were basically in the same financial condition. Both contributed to the acquisition of the marital home as evidenced by testimony that his entire check from his primary job and appellee's employment check went into their joint checking account so that appellee could pay the household and other expenses. Both parties are the same age and are receiving social security and pension benefits, the appellant receiving $89 more per month. Although the appellant recognizes that at the time of trial he was able to supplement his retirement income, to the extent of $3,000 annually, he urges that this factor is not sufficient to support the award of the entire marital home to the appellee. The appellant also contends that the trial court's finding that his ability to pay maintenance was impaired was erroneous.

The appellee contends that she was not awarded property valued at $63,000 since the marital home was encumbered by the appellee's obligation to repay June Miller for her expenditures toward the mortgage. She further contends that she was deprived of a substantial marital asset during the last 10 years of the marriage, approximately $300 per month that appellant earned at his second job. Appellee stated that she is unemployable due to a heart condition and thus has no reasonable opportunity for future acquisition of income. Finally, the appellee contends the award of the marital home, in lieu of maintenance, was proper because the appellant had repeatedly failed to meet his obligations for temporary support.

■■ The distribution of marital property rests within the sound discretion of the trial court (*In re Marriage of Fleming* (1980), 80 Ill. App. 3d 1006, 400 N.E.2d 625), and the trial court's decision in this regard will not be set aside unless there is a clear abuse of discretion (*In re Marriage of Thornqvist* (1979), 79 Ill. App. 3d 791, 399 N.E.2d 176) or the distribution is contrary to the manifest weight of the evidence (*Klingberg v. Klingberg* (1979), 68 Ill. App. 3d 513, 386 N.E.2d 517). Section 503(c) of the Dissolution Act requires that the trial court distribute marital property in just proportion after considering all relevant factors. However, "Just proportion" does not require an equal division of the marital property. *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17; *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.

Under the circumstances, it is proper to award the marital home to one spouse even though the home is virtually all of the marital property. In *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, this court affirmed the award of the marital home, encumbered by a mortgage, to the wife who was also awarded custody of the two children born of the marriage. The husband had nonmarital assets amounting to $624,000 and had an annual income of $54,000, whereas the wife's income from her part-time employment was $15,000. Based on the husband's full-time

employment and substantial assets, as well as his greater opportunity for future acquisitions of capital assets and income, this court found the award of the marital home to the wife was proper.

In *In re Marriage of Sipich* (1980), 80 Ill. App. 3d 883, 400 N.E.2d 696, the marital home, which had a net equity of $53,000, was awarded solely to the wife. In addition, she was awarded the household furnishings, $100 per month for 36 months and a $2,000 bank account. In total, the wife was awarded property having a value of $73,600. The husband, however, was awarded his insurance brokerage business and the building housing it. The net equity of the building was estimated at about $52,500, and the property produced an annual income of more than $16,000. This court found that the distribution ordered by the trial court was approximately equal and that the division of marital property was not disproportionate or unjust.

Unlike *Atkinson* and *Sipich*, the parties in the instant case occupy similar financial positions, and there is only one substantial marital asset. The factual situation in *In re Marriage of Fleming* is similar to that in the present case. In *Fleming* the husband's net income was $1,385 per month and his monthly expenses were $1,000. In addition to the marital home his assets included $8,000 in a company savings plan which had a $3,000 debt against that account. The wife had a monthly net income of $1,000 and expenses of $719 to $769. She owned approximately $8,000 in company stock and had a $900 savings account. The appellate court affirmed the trial court's order giving each party an equal equity in the marital home and ordering each party to share the expenses of the wife's child by a previous marriage. The child was adopted by the husband.

■■ We believe that the award of the marital home to the wife in the instant case was not supported by the evidence and that this distribution was not in "just proportion" since both parties contributed toward the financial obligations of the marriage and occupied similar financial positions. While the appellee is entitled to a greater portion of the value of the marital home, since she was given the property in lieu of maintenance (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(9)), the appellant also was entitled to a certain interest in the marital home.

The appellant also argued that the award of property in lieu of maintenance was erroneous. We reject this argument, for the award of property in lieu of periodic maintenance payments was proper in view of the evidence that the appellant failed to timely meet his obligations of temporary support and the trial court's finding that the appellant was uncooperative at trial. See *Schasker v. Schasker* (1975), 34 Ill. App. 3d 980, 341 N.E.2d 717.

We conclude, therefore, that the trial court should reconsider the

property disposition in accord with the views expressed herein. On remand, the trial court may consider the daughter's claim of indebtedness against the property. Such a debt was found to exist based on the testimony presented, and we cannot say the trial court's finding in that regard was erroneous.

■ The appellant's next contention is that the award of attorney's fees to appellee's counsel was an abuse of the trial judge's discretion because he was denied due notice and hearing as required by section 508 of the Dissolution Act and because the court completely disregarded the financial resources of the parties.

The appellee's attorney's fees totaled $6,540. The trial court ordered the appellant to pay $3,500 toward the cost of the appellee's attorney's fees. The trial court found that he was responsible for this amount because he failed to obey temporary orders of the court and because appellant "put counsels through an awful lot of work" and caused "an untold amount of expenditure of time and effort even to the question of the date of marriage."

The allowance of attorney's fees rests largely in the discretion of the trial court. (*In re Marriage of Edelstein* (1980), 82 Ill. App. 3d 574.) To justify an award of attorney's fees, the party seeking relief must demonstrate financial inability to pay and the ability of the other spouse to do so. (*In re Marriage of Fleming.*) Financial inability exists where payment of the fees would strip the person of the means of support and undermine the economic ability of that person. (*In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 396 N.E.2d 1192.) When the financial and other circumstances of both parties are substantially similar and the wife's inability and husband's ability to pay has not been shown, an award of attorney's fees is an abuse of discretion. *In re Marriage of Fleming*; *Klingberg v. Klingberg.*

■ A review of the evidence presented at trial in the case at bar does not support a finding that the financial resources of the parties are such that the appellant was able to pay and the appellee was unable to pay appellee's attorney's fees. The record indicates that both parties had limited assets and were basically in the same financial position. Therefore, the appellee was not entitled to attorney's fees based on the financial ability of the parties.

The trial court in the instant case awarded the appellee $3,500 for attorney's fees because the appellant failed to obey the temporary orders of the court and because appellant "put counsels through an awful lot of work" and caused "an untold amount of expenditure of time and effort." Section 610(c) of the Dissolution Act provides that vexation and harassment are relevant considerations in the award of attorney's fees for

the cost of a proceeding to modify a custody judgment. However, they are not to be considered in the award of attorney's fees under section 508 for other proceedings under the Act (See *In re Marriage of Stewart* (1979), 79 Ill. App. 3d 1125, 398 N.E.2d 1199.) Under section 508 the sole criterion for assessing fees is the relative financial resources of the parties. Therefore, we hold that it was an abuse of discretion for the trial court to award attorney's fees to appellee's counsel since both parties were basically in the same financial position.

In view of our disposition of the issues discussed above we find it unnecessary to discuss the other points urged by the appellant.

For the foregoing reasons the judgment of the Circuit Court regarding the distribution of marital property is reversed and remanded for further proceedings in accordance with the views expressed herein. The award of attorney's fees to appellee is reversed.

Reversed and remanded in part; reversed in part.

McNAMARA and SIMON, JJ., concur.