*In re* MARRIAGE OF CAROL FELSON, Petitioner-Appellee, and JOHN FELSON, Respondent-Appellant.

First District (3rd Division)   No. 86—2730

Opinion filed June 15, 1988.

924

FREEMAN, J., concurring in part and dissenting in part.

J. Roger Sewell, of Melrose Park, and Paul R. Jenen, of Wheeling, for appellant.

Melvyn H. Berks, of Des Plaines, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Respondent, John Felson, appeals from those portions of a judgment for dissolution of marriage awarding custody of the parties' minor child, Kristina, to petitioner, Carol Felson, and requiring John to pay a portion of Carol's attorney fees. John also appeals from an order of the trial court precluding him from conducting re–cross-examination of Carol and a witness who testified in her behalf. We affirm.

John and Carol Felson were married in October 1981. In April 1983, Kristina was born. Thereafter, a petition for dissolution of marriage was filed by Carol on July 17, 1984. On August 1, 1984, when Kristina was one year old, the parties entered into an agreed order effectively splitting the physical custody of Kristina between them. A judgment for dissolution of marriage was subsequently entered by the trial court on October 2, 1986, and John did not file a motion for reconsideration. This appeal followed. We affirm.

We first address John's argument that the trial court erred in awarding custody of Kristina to Carol. John contends that the trial court's award of custody was against the manifest weight of the evi-

dence. In support of his contention, John essentially argues that the reasoning of the trial court in its written opinion concerning custody is totally unsupported by the record and is refuted by the Child Custody Project of the Isaac Ray Center (Center) report and the testimony of the witnesses. We disagree.

In the present case, the trial court tendered a written opinion to the parties concerning the custody of Kristina. Kristina was three years old at the time and was examined by the court in an *in camera* hearing. Kristina was not questioned concerning her wishes as to custody. In its opinion, the trial court stated:

"Throughout the pendency of this proceeding, the child has split her time almost equally between the parents. Testimony concerning this arrangement established that when Kristina resided with John, a substantial amount of time was spent with John's parents at their residence. Testimony also established that John's parents exercised a substantial influence on both John and their granddaughter, a fact clearly observable to the Court from the testimony of Terese Felson, the respondent's mother.

The Court has considered all statutory factors relevant to the custody determination and based upon those factors, finds that it is in the best interest of the minor child that custody be awarded to Carol Felson. It is clear to the Court that Carol seeks custody based upon the mother-daughter-relationship that she desires to nurture. John's motives are not as clear to the Court, but it appears that his custody desire may be based upon the wishes of his extended family rather than the needs of Kristina. While both parties are fit and proper persons to be awarded custody, it is clear to the Court that Kristina's best interests require the award of custody to Carol Felson."

There was no evidence presented to indicate that either Carol or John suffered from any physical or emotional disabilities. Nor was there any evidence that Kristina suffered from such problems.

■ The determination as to which party to a failed marriage shall receive custody of their child is one of the most difficult tasks of a trial court. Such a decision necessarily rests on the temperaments, personalities and capabilities of the parties, and the demeanor of the witnesses who testify at trial. The trial judge is in the best position to evaluate these factors. (*In re Marriage of Kennedy* (1981), 94 Ill. App. 3d 537, 545, 416 N.E.2d 947, 953.) As such, a trial court has broad discretion in awarding custody, and there is a strong and compelling presumption in favor of a court's decision. A court of review will not

overturn a trial court's custody determination unless the decision is against the manifest weight of the evidence or is manifestly unjust. *In re Marriage of Stuart* (1986), 141 Ill. App. 3d 314, 318, 490 N.E.2d 243, 246.

■ There are many relevant factors to be considered in determining which custodial arrangement will serve the best interests of a child. Among the factors applicable here are: (1) the wishes of Carol and John as to Kristina's custody; (2) the interaction and interrelationship of Kristina with Carol, John and the other individuals who might significantly affect Kristina's best interest; (3) Kristina's adjustment to her home and community; and (4) the mental and physical health of all the people involved in Kristina's life. Ill. Rev. Stat. 1985, ch. 40, par. 602.

■ We initially address John's contention that the Center's report establishes that the trial court erred in awarding the custody of Kristina to Carol. John contends that the Center's report clearly indicates that Kristina's best interest would be served if John were awarded custody. John therefore concludes that the trial court's award of custody was against the manifest weight of the evidence and must be vacated. We find no merit to this argument.

Pursuant to an agreement of the parties, the court appointed the Center to evaluate Carol, John and Kristina for custody purposes. Following several interviews with the parties and with Kristina, the Center tendered a written report to the parties. In its report, the Center stated:

"We recommend that it is in the best interest of Kristina to remain in this shared (joint) custody arrangement. Both of these parents are competent at rearing Kristina ***.

\* \* \*

In general, Mr. Felson provides a sensitive, supportive and consistent environment for Kristina and with his parents' help, she receives much affection, stimulation and enrichment from them all.

\* \* \*

In summary, Mrs. Felson is a caring and concerned parent. She is consistent in her discipline and scheduling with Kristina. Mrs. Felson seems to be struggling with some identity issues of her own and is not quite as sensitive to Kristina's moods and needs as her husband. Mrs. Felson's self-focus may be due to the divorce adjustment or could be related to delayed developmental issues of her own. She is more impatient with Kristina and seems to take a sterner, somewhat more dictatorial atti-

tude toward child-rearing.

\* \* \*

This is an unusual case in that the evaluators were left with the distinct impression that each of these parents was continuing to struggle with the issue of divorce. Although each parent has been hurt, there still seems to be an emotional investment on each of their parts in the marriage. These parents have similar social, emotional and intellectual goals for Kristina and each appears to be caring and concerned about her."

The report further indicates that both Carol and John were in therapy at that time.

Contrary to John's contention, the Center's report does not establish that the trial court's award of Kristina's custody to Carol is against the manifest weight of the evidence. The Center's report indicates that while both parties are competent to care for Kristina, neither Carol nor John is without problems. While the Center's report indicates that Carol may be more stern with Kristina than John, the report implies that John often has his parents' help in caring for Kristina. Carol alone, however, cares for Kristina when they are together.

Moreover, the Center's recommendation that the parties continue splitting physical custody of Kristina is not binding on the court. A recommendation concerning the custody of a child is only that, a recommendation, and by its very nature is incapable of being binding on a trial court. Clearly, a trial court is free to evaluate the evidence presented and accept or reject it in whole or in part. Our examination of the record reveals that the trial court evaluated all of the evidence presented by the parties and chose not to follow the recommendation of the Center regarding the physical custody of Kristina. We find no error in this decision. Accordingly, John's argument concerning this issue must fail.

■ John next contends that based upon the testimony of the witnesses, the trial court's award of the care and custody of Kristina to Carol was against the manifest weight of the evidence. We likewise find no merit in this argument.

Both Carol and John presented numerous witnesses in their behalf in an effort to prove that it would be in Kristina's best interest to be respectively in each parties' custody. Initially, the record reveals that the majority of the testimony of each of the parties' witnesses consisted of attempts to impugn the integrity of the respective party with references to extramarital affairs, drug usage and physical and emotional neglect of Kristina. Moreover, while each witness professed a close relationship with his respective party, in only a few instances

did that appear to be the case.

It is our opinion that this case represents the all too common problem of custody cases; hostile parties attacking the integrity of each other through testimony of their witnesses. Clearly, Kristina did not benefit from this behavior. Here, the trial court was in the best position to judge the temperaments, personalities and capabilities of the parties and the credibility of the other witnesses. Based upon our review of the record before us, we cannot conclude that the trial court's decision concerning the custody of Kristina was against the manifest weight of the evidence.

■ John next assigns as error the trial court's refusal to allow re–cross-examination of Carol and Celeste Ray, a witness who testified in Carol's behalf. We disagree.

The scope and extent of cross-examination and re–cross-examination are within the sound discretion of the trial court. Where new evidence is elicited during redirect examination, the opposing party must be given the opportunity to cross-examine on the new matter. However, the privilege of re–cross-examination as to matters not covered on redirect is subject to the discretion of the court. See *Johns-Manville Products Corp. v. Industrial Comm'n* (1980), 78 Ill. 2d 171, 181, 399 N.E.2d 606, 611; *Grundy County National Bank v. Myre* (1975), 34 Ill. App. 3d 287, 288-89, 339 N.E.2d 348, 350.

■ Here, no new evidence was elicited from either Carol or Ray on redirect examination. Therefore, re–cross-examination was not required. Moreover, re–cross-examination of Carol and Ray would simply have covered areas addressed and answered in direct, cross- and redirect examination. We therefore conclude that the trial court did not abuse its discretion in precluding John from re–cross-examining Carol and Ray.

John lastly argues that the trial court abused its discretion when it ordered him to pay $2,500 as partial payment of Carol's attorney fees. We disagree.

■ Ordinarily, a party for whom legal services are rendered is responsible for those fees. However, pursuant to section 508(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act), a court may order a spouse to pay a reasonable amount for the attorney fees necessarily incurred by the other spouse in connection with the maintenance or defense of any action brought under the Act. (Ill. Rev. Stat. 1985, ch. 40, par. 508(a)(1).) A party seeking an award of attorney fees must show a financial inability to pay and a corresponding ability of the other spouse to do so. Financial inability to pay does not require a showing of destitution. (*In re Marriage of Erickson* (1985),

136 Ill. App. 3d 907, 916, 483 N.E.2d 692, 699.) Nor is it necessary for a spouse seeking such fees to divest herself of capital assets or deplete her means of support and thereby undermine her economic stability. *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 918, 466 N.E.2d 925, 934.

■ Once the trial court determines that an award of attorney fees is appropriate, the court must then determine the reasonableness of the request. Reasonableness of a request for attorney fees involves consideration of the: (1) skill and standing of the attorneys involved; (2) nature and complexity of the litigation; (3) time and labor required; (4) customary charge in the community and (5) benefits the client derived from the representation. Both the allowance of attorney fees and the amount awarded are matters within the sound discretion of the trial court. Absent an abuse of the court's discretion, a fee award will not be reversed on appeal. *In re Marriage of Erickson*, 136 Ill. App. 3d 907, 919, 483 N.E.2d 692, 700.

■ In the present case, our review of the record establishes that the financial positions of the parties were nothing less than extreme, with John clearly being in a position to assist Carol in the payment of her attorney fees. Moreover, after reviewing the fee petition and the hearing testimony, the court indicated in its order that it had considered the factors as set forth in section 508 of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 508). The court then required John to pay a portion of Carol's outstanding attorney fees. Considering all of the relevant factors before us, including the financial positions of the parties, we conclude that the trial court properly exercised its discretion in requiring John to pay a portion of Carol's attorney fees.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

WHITE, P.J., concurs.

JUSTICE FREEMAN, concurring in part and dissenting in part:
I respectfully dissent from the portion of the majority's opinion affirming the trial court's order directing the husband to pay a portion of the wife's attorney fees. I concur with the majority's opinion on the remaining issues in this appeal.

Regarding the attorney fee issue, the majority concludes that the financial positions of the parties are "extreme," (171 Ill. App. 3d at 930) and the husband is clearly in a position to assist the wife in the payment of her attorney fees. The majority holds that based on the

evidence of the parties' financial positions and the trial court's order indicating that it had considered the relevant statutory factors, the trial court did not abuse its discretion in requiring the husband to pay $2,500 as partial payment of the wife's attorney fees.

The majority fails, however, to specify what evidence it relies on for its conclusion regarding the relative financial positions of the parties. I disagree with the majority's conclusion and would find that the wife failed to show that she was unable to pay her attorney fees and that the husband was able to pay the fees on her behalf. Accordingly, I would reverse the trial court's finding on this issue and require the wife to be responsible for payment of her own attorney fees.

The evidence indicates that the husband's net available income is $326.54 per month. This amount is based on his net income from his employment, less child support payments and property distribution to the wife. The husband's average monthly expenses were shown to be $1,063.71. The husband therefore has a monthly deficit of $737.17.

The wife, on the other hand, has a monthly gross income of $1,333 from her employment as a customer service representative, and also receives $322.50 monthly for child support and $319.44 monthly for property distribution from the husband. Further, she receives approximately $41.66 in additional monthly income from hair-cutting services she performs. The wife's monthly gross income totals $1,974.94. The wife's monthly expenses were shown to be $1,281.

In her appellate brief, the wife points out that those figures relied on for the calculation of the income of the husband reflect net income, while the figures used for calculation of her income reflect gross income. The wife also asserts that the husband, in his brief, fails to discuss his accumulation of assets and equity in the marital home. I do not believe that these factors would change the result.

Attorney fees are the primary responsibility of the party for whom the services are rendered. (*In re Marriage of Meyer* (1986), 140 Ill. App. 3d 1031, 489 N.E.2d 906.) Financial inability to pay the fees exists where payment would strip the person of the means of support and undermine her economic stability. (*In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336.) Where the financial and other circumstances of both parties are substantially similar and the wife's inability to pay has not been shown, an award of attorney fees is an abuse of discretion. *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 405 N.E.2d 1099.

In the instant case, the wife has not shown that she is unable to pay her own attorney fees or that the husband is in any better financial position to pay the fees than she is. (See *Hofmann v. Hofmann*

(1983), 94 Ill. 2d 205, 446 N.E.2d 499.) The evidence indicates that based on his income and expenses, the husband suffers a monthly deficit. The wife, on the other hand, was shown to have sufficient income to meet her ongoing expenses. Further, the wife has a demonstrated earning ability which would continue for the future. (See *In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 445 N.E.2d 412.) As of September 15, 1986, she was employed as a customer service representative, earning $15,996 annually, and is able to earn additional income performing hair-cutting services. This income, in addition to the income she receives from the husband in property distribution and child support, shows the wife's ability to pay her own attorney fees. Requiring the wife to pay $2,500 in attorney fees would not strip her of her means of support or undermine her economic stability. For the foregoing reasons, I would find that the trial court abused its discretion in ordering the husband to pay $2,500 of the wife's attorney fees.