LAURA B. G. BUTLER *v.* PIERS J. R. BUTLER
(SC 17153)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued September 7—officially released November 2, 2004

*Wesley W. Horton*, with whom were *Daniel J. Krisch*, *Carlo Forzani* and, on the brief, *Sarah J. Healey* and *Christopher Mattei*, legal interns, for the appellant (plaintiff).

*Lori Welch-Rubin*, with whom was *Margaret C. Hollon*, for the appellee (defendant).

### Opinion

KATZ, J. The plaintiff, Laura B. Gary, formerly Laura B. G. Butler, appeals[1] from the judgment of the trial court that terminated an Illinois order of joint custody and awarded sole custody of her two minor children to the defendant, Piers J. R. Butler. The plaintiff claims that the trial court improperly failed to apply the clear and convincing burden of proof required to modify joint custody under the custody provisions of the Illinois Marriage and Dissolution of Marriage Act; 750 Ill. Comp. Stat. Ann. § 5/601 et seq. (West 1999); and that its decision to award sole custody to the defendant was contrary to the manifest weight of the evidence. We conclude that the trial court applied the appropriate burden of proof and that its decision awarding sole custody to the defendant was not an abuse of discretion. Accordingly, we affirm the judgment.

The trial court's comprehensive memorandum of decision sets forth the following tortured history of postdissolution proceedings between the parties and the pertinent facts leading to its decision to terminate the joint custody agreement and award custody of the parties' two minor children to the defendant. An Illinois court dissolved the marriage of the parties on December

---

[1] The plaintiff appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

6, 2000, incorporating into its judgment a marital settlement agreement. That settlement included a joint parenting agreement (parenting agreement) governing the rights and responsibilities of the parties with respect to their two minor children, Alexa, born on February 16, 1997, and Morgan, born on May 14, 1999. The parties stipulated in the parenting agreement that each was "a fit and proper person to be the custodial parent of their minor children." In accordance with that stipulation, the parties agreed to have joint legal custody of Alexa and Morgan and joint decision-making authority over all major decisions affecting their health, education and extracurricular activities, religious training and general welfare. The parenting agreement designated the plaintiff as the primary custodial parent for the children, with the defendant to have visitation on alternate weekends from 5:30 p.m. on Friday until 5:30 p.m. on Sunday, and one evening each week for dinner. The children were to spend equal time with each party for holidays, birthdays and summer vacations. Finally, the parenting agreement included a clause providing for the presence of a nanny during all visitation with the defendant.[2]

Approximately two weeks after the date of the dissolution, the plaintiff moved for an emergency order for supervised visitation and other relief. She then filed an emergency motion to suspend the defendant's visitation

---

[2] The clause, as originally drafted, provided: "Presence of Nanny. The parties agree that until each child is five (5) years of age, the children's nanny (or an alternate nanny selected by [the plaintiff]) will accompany them during all visitation. At [the plaintiff's] sole discretion during out-of-state travel with the children, [the defendant] shall either provide a nanny at his destination who shall be required to supervise the children at all times, or [the plaintiff] shall pay the transportation costs of the nanny of her choice." Concurrently with the execution of the parenting agreement, the parties initialed a handwritten amendment to be inserted after the first sentence quoted previously, which provided: "If the nanny is not available, that shall not be grounds to [forgo] the visitation. [The defendant] shall be civil to the nanny and shall no[t] behave in a manner calculated to influence the nanny not to attend visitation."

rights, alleging that he had committed sexual improprieties toward the children. Following an evidentiary hearing on April 21, 2001, an Illinois court found that the defendant had not endangered the children during unsupervised visitation and, accordingly, granted the defendant's motion for a directed verdict. The court also issued an order that, because the parties had relocated to Connecticut in late 2000, this state was the appropriate forum for all future litigation.

Since that time, through numerous pleadings addressed largely to issues of custody and visitation, the plaintiff unsuccessfully has sought the intervention of the Illinois court, attempted to change the venue from the judicial district of Waterbury, where the foreign matrimonial judgment had been certified, to the judicial district of Stamford and sought the intervention of the London High Court while the children were in England visiting the defendant's family. Thereafter, the plaintiff sought an ex parte order seeking sole custody of the children as well as an order to restrain the defendant from contacting her or the children. The trial court, *Axelrod, J.*, denied ex parte relief, but scheduled a hearing on those matters as well as other motions directed principally at the parties' differing interpretations of their parenting agreement.

The trial court, *Leheny, J.*, resolved the disputes relating to the interpretation of the agreement, concluding, inter alia, that the agreement permitted the defendant to have visitation without a nanny being present if none were available. The court then turned to the only remaining issue, the plaintiff's motion to modify the agreement to award her sole custody of the children. That motion was accompanied by the plaintiff's affidavit alleging that the defendant's actions seriously had endangered the children's physical, mental and emotional well-being. Specifically, the plaintiff claimed that the defendant had exposed Alexa to pornography on

his computer, that he had slept with her in his bed during visitation and that, according to the nanny, Alexa had engaged in inappropriate conduct when bathing with her sister. Also before the court was the defendant's motion seeking sole custody,[3] which alleged that the plaintiff improperly had denied him access to his children and that she no longer was capable of parenting in accordance with the children's best interests.

After a lengthy evidentiary hearing conducted over several days, the trial court issued a comprehensive memorandum of decision, setting forth factual findings regarding the parties' allegations and their conduct with respect to the children and the parenting agreement. As an initial matter, the trial court traced the history of the plaintiff's allegations regarding the defendant's inappropriate behavior around Alexa and determined that the plaintiff's allegations of abuse were unfounded. According to the testimony of various witnesses, Alexa had been examined by a pediatrician and a therapist, both of whom then reported their concerns to the department of children and families (department), which in turn engaged the services of a forensic team to conduct interviews in the presence of the state police. As noted by the trial court, the team found no evidence of sexual abuse and could not confirm that the defendant had engaged in any inappropriate sexual behavior with Alexa.[4] The trial court found that Alexa's responses to questioning by her pediatrician and therapist had

---

[3] The defendant initially filed a motion seeking to enforce the joint custody order, but to modify his visitation. He subsequently amended his motion seeking either to continue joint legal custody and award him sole physical custody, allowing the plaintiff visitation, or alternatively, to award him both legal and physical custody.

[4] On April 26, 2002, three weeks after it had received the report alleging abuse, the department sent a letter to the plaintiff notifying her that it had decided to close the case related to its investigation of Alexa because "[t]he report has been unsubstantiated on physical neglect based on interviews of all family/household members and collateral providers."

been the result of the plaintiff's recitation of events, rather than Alexa's own recall. Although the trial court found that "Alexa [had] witnessed something while with her father, which she perceived to be, 'naked men and women kissing peepees and turning somersaults,' " the court could not determine the source of the image—that is, whether Alexa had seen it on television or on the defendant's computer.

Turning to the defendant's allegations regarding the plaintiff's behavior, the court found that the plaintiff had subverted the joint parenting agreement in numerous ways. Pursuant to the agreement, the parties had agreed that they would relocate from Illinois to the Woodbury and Litchfield areas of Connecticut. Nevertheless, after the defendant had purchased a home in Woodbury, the plaintiff rented a house forty miles away in New Canaan, which resulted in interference with the defendant's court-ordered midweek visitation with the children. The plaintiff also had interfered with the communication necessary to facilitate visitation by failing to give the defendant her cell phone number and to timely review electronic mail (e-mail). The court highlighted *numerous* specific occasions when the plaintiff had hampered the defendant's access to the children both by telephone and in person[5] and various times that her actions had reflected poor judgment, including summoning the

---

[5] Specifically, the trial court noted the following: the defendant had been able to speak with his children only one time per month from May through October, 2001, despite almost daily telephone calls to the plaintiff's home; the plaintiff had failed numerous times to adhere to the condition in the agreement that she inform the defendant at least thirty days in advance of any extended out-of-town trips with the children; the plaintiff had failed to inform the defendant of her move to New Canaan in a timely fashion and, when she moved a second time, she had no telephone for days; the plaintiff had blocked her e-mail from October, 2001, until August, 2002, when she was ordered by the court to unblock it; and the plaintiff had denied the defendant visitation because of the absence of a nanny, despite the fact that the agreement expressly stated that the unavailability of a nanny "shall not be grounds to [forgo] the visitation." See footnote 2 of this opinion.

police to address visitation disputes in the children's presence.

On the other hand, the court identified the defendant's lapses in judgment regarding his wearing a sexually suggestive tee shirt of an elephant engaged in anal penetration of a mouse, the children's inappropriate television viewing and the defendant's rude behavior toward the children's nannies. Additionally, the court commented on the defendant's lack of self-awareness, his discounting of the children's need for therapy as well as his own need to engage in counseling, particularly with regard to parenting issues, and his failure to appreciate the impact he has on his children.[6]

The trial court then turned to the applicable legal standards, noting that, pursuant to Illinois law,[7] in order to modify a joint custody arrangement, the court was required to find by clear and convincing evidence that a material change in circumstances had occurred and that a modification was necessary to serve the best interests of the children. In connection with the first part of the inquiry, the court cited several facts relating to the plaintiff's interference with the defendant's court-ordered visitation, evincing changes in circumstances following the dissolution and concomitant parenting agreement.[8] See footnote 5 of this opinion and the accompanying text.

The trial court then engaged in a lengthy analysis of the best interest consideration. Although the court

---

[6] The trial court's conclusions regarding the defendant's lack of self-awareness were based on an evaluation by Anne Phillips, a clinical psychologist who had met with the defendant, Alexa and the plaintiff. Phillips' analysis will be discussed more fully in our discussion of the plaintiff's second claim of trial court impropriety. See part II of this opinion.

[7] It is undisputed that Illinois law governs the parties' motions to terminate joint custody.

[8] Additionally, the court noted some evidence that "slipped through" relating to prejudgment issues, including allegations of abuse by the defendant. The court, however, made no findings based on these allegations.

recognized that the children loved both parents and that they had adjusted to their home, school and community, their relationship with the defendant had been interrupted continuously. The plaintiff had not provided the children with the requisite stability or continuity either in the location of their home or in their contact with the defendant. The trial court concluded that, based on the plaintiff's past conduct and failure to follow court orders, it was unlikely that she would permit the defendant to have a significant relationship with the children as contemplated in the Illinois judgment, noting that the plaintiff "has frequently failed to follow the court's orders. She has not been willing or able to facilitate and encourage a close and continuing relationship between the [defendant] and the children." Moreover, these circumstances had led to the children losing substantial visitation time, had caused police officers to become involved in what should have been routine events and had caused the children to travel long distances not contemplated by the original decree for visitation. The court also found that the plaintiff's own statements suggested there was no assurance that she would remain in Connecticut. In sum, based on the examples it previously had cited, the court concluded that the plaintiff had made "immature choices based more on her emotional needs than on the best interests of the children" and, despite counseling, "there was little, if any, indication that [the plaintiff's] attitude had changed."[9]

Accordingly, after its full consideration of all "the evidence, the applicable law, the demeanor of the parties, the arguments of counsel and the testimony and arguments of the [g]uardian ad [l]item," the trial court

[9] The trial court, in its memorandum of decision, noted the plaintiff's decision to continue to make allegations of sexually inappropriate behavior against the defendant to Alexa's physicians and teachers and within the child's hearing despite the Illinois court's rejection of her allegations.

determined that it was in the best interests of the children to award sole custody to the defendant, who "will provide a calmer and more stable environment for the children and more structure in discipline . . . [and who] is less likely than [the plaintiff] . . . to interfere with the children's relationship with her." In addition to standard orders regarding visitation, the trial court imposed the following orders: "1C. A nanny is to be present at *all* times the children are with [the defendant]. The nanny shall be responsible for all grooming and hygiene of the minor children. A nanny shall remain until the later of the following occurrences: Morgan attains the age of [five] years or the therapist(s) for the minor child(ren) recommends [that] the child(ren) [are] self-regulating. The therapist shall convey this information to the parents and the [g]uardian ad [l]item so that this court judgment may be modified accordingly.

"1D. In the interests of all, the minor children shall sleep in their respective bedrooms.

"1E. The [defendant] is to ensure that his children do not gain access to his computer. He is to install protective devices designed to prevent children from viewing or hearing adult materials. He is to ensure that no adult videos, films, magazines, books or other materials are accessible to the children." (Emphasis in original.) This appeal followed.

The plaintiff claims that the trial court improperly awarded sole custody to the defendant. Specifically, she contends that the trial court failed to determine by clear and convincing evidence, as required under Illinois law, that awarding sole custody to the defendant was in the best interests of the children. She further contends that the trial court's decision to award sole custody to the defendant was contrary to the manifest weight of the evidence because both the guardian ad litem and the court-appointed psychologist had recom-

mended that the plaintiff be awarded sole custody and the court's factual findings demonstrated the defendant's unfitness to be sole custodian. We address each of these arguments in turn.

I

The plaintiff first contends that, although the trial court recognized that it was statutorily required, under § 5/610 of the Illinois Marriage and Dissolution of Marriage Act (§ 610), to find by clear and convincing evidence that modifying the custody arrangement in the defendant's favor was in the best interests of the children, it failed to apply that standard or to make express findings in support thereof. The defendant contends that the court is not required to make findings in accordance with this heightened burden of proof when both parties seek to modify a joint custody order to obtain sole custody. We agree with the defendant.

As with any issue of statutory construction, we begin with the language of the statute. Section 610 (b) provides in relevant part: "The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. In the case of joint custody, if the parties agree to a termination of a joint custody arrangement, the court shall so terminate the joint custody and make any modification which is in the child's best interest. . . ." 750 Ill. Comp. Stat. Ann. § 5/610 (b) (West 1999). The plaintiff contends that the first

sentence of the statute is controlling, while the defendant contends that the second sentence is controlling.

It is clearly established that, as a general matter, a party seeking either to terminate or to modify a custody agreement has the burden of proving two elements by clear and convincing evidence: (1) a change in circumstances since the original custody order has occurred; and (2) a modification is necessary to serve the best interests of the child. See *In re Marriage of R.S.*, 286 Ill. App. 3d 1046, 1051, 677 N.E.2d 1297 (1996); *In re Marriage of Riess*, 260 Ill. App. 3d 210, 217, 632 N.E.2d 635 (1994). This dual burden is reflected in the first sentence of § 610 (b) and, by its express language, applies to both joint and sole custody agreements.

The second sentence of § 610 (b), however, addresses a specific situation—when both parties have agreed to modify or terminate joint custody—and does not expressly engraft the clear and convincing burden of proof set forth in the preceding sentence. An agreement to terminate joint custody is manifested by a stipulation or cross petitions for sole custody. See *In re Marriage of Spent*, 342 Ill. App. 3d 643, 651, 796 N.E.2d 191, appeal denied, 206 Ill. 2d 645, 806 N.E.2d 1073 (2003); *In re Marriage of Ricketts*, 329 Ill. App. 3d 173, 178, 768 N.E.2d 834 (2002). Because both parties in the present case sought sole custody; see footnote 3 of this opinion; they implicitly had agreed to terminate joint custody. See *In re Marriage of Spent*, supra, 651 (fact that no formal agreement or stipulation to terminate joint custody exists is irrelevant). Accordingly, the second sentence of § 610 (b) is at issue here.

The Illinois courts previously have considered whether the clear and convincing burden of proof applies to a trial court's decision to terminate joint custody upon agreement of the parties, explicitly or implicitly, and to award sole custody to the parent not

originally designated as the primary physical custodian. See *In re Marriage of Lasky*, 176 Ill. 2d 75, 77, 678 N.E.2d 1035 (1997); *In re Marriage of Ricketts*, supra, 329 Ill. App. 3d 178. The courts have concluded that an agreement to terminate joint custody alone provides a sufficient basis for a court to conclude that "circumstances have changed so as to warrant a modification of joint custody." *In re Marriage of Lasky*, supra, 78; accord *In re Marriage of Ricketts*, supra, 178. Thus, the two elements of changed circumstances and necessity for modification cited in the first sentence of § 610 (b) are satisfied per se in cases when such an agreement is present. The Illinois Supreme Court has explained that application of a heightened burden of proof in those cases is unnecessary because it is self-evident that joint custody is no longer in the best interest of the child. *In re Marriage of Lasky*, supra, 80–81. Indeed, "[i]f it is accepted that joint custody can only succeed whe[n] the parents have an ability to cooperate effectively and consistently with each other towards the best interest of the child . . . then joint custody should be readily terminated when such cooperation no longer exists." (Citation omitted; internal quotation marks omitted.) *In re Marriage of Wycoff*, 266 Ill. App. 3d 408, 412, 639 N.E.2d 897, appeal denied, 158 Ill. 2d 566 (1994). "Requiring a stricter standard defeats the purpose of protecting the child . . . ." *In re Marriage of Melton*, 288 Ill. App. 3d 1084, 1087, 681 N.E.2d 1046 (1997).

The plaintiff contends that these cases stand simply for the proposition that the first element of changed circumstances need not be proved by clear and convincing evidence and do not address whether the heightened standard applies to the second element of the best interest of the child. We disagree.

As we previously have noted, these cases addressed not merely the issue of whether an agreement to modify joint custody demonstrated that circumstances had

changed, but also whether it demonstrated that they had changed *"so as to warrant a modification of joint custody."* (Emphasis added.) *In re Marriage of Lasky,* supra, 176 Ill. 2d 78. Indeed, after rejecting the application of a heightened burden of proof, the courts have proceeded to evaluate under the clearly less stringent manifest weight of evidence standard[10] whether the court properly decided to award sole custody to one parent over the other. See, e.g., id., 81 (remanding case to Appellate Court for consideration of custody decision under manifest weight of evidence standard); *In re Marriage of Ricketts,* supra, 329 Ill. App. 3d 179 (reaching, on appellate review, issue of whether trial court decision to terminate joint custody was consistent with manifest weight of evidence); see also *In re Marriage of Spent,* supra, 342 Ill. App. 3d 651–52 (evaluating modification of joint custody agreement to sole custody under manifest weight of evidence standard); *In re Marriage of Lovejoy,* 158 Ill. App. 3d 1, 3–4, 510 N.E.2d 636 (1987) (same). Moreover, the statute expressly instructs that, in such cases, any modification in the child's best interest may be made. See 750 Ill. Comp. Stat. Ann. § 5/610 (b) (West 1999); see also *In re Marriage of Spent,* supra, 651 ("once both parties moved to terminate the joint-custody agreement [indicating a change of circumstances had occurred], the trial court, pursuant to [§] 610 [b], had to terminate the joint-custody arrangement and make any modification that was in the child's best interests"). It is telling that our research has failed to uncover a single Illinois appellate court decision, and the plaintiff has not cited any, in which both parties sought to terminate a joint custody agreement in favor

---

[10] This standard of proof is addressed further in part II of this opinion.

of sole custody to one parent and the court applied the clear and convincing burden of proof.[11]

Finally, we note the untenable result that would occur should we adopt the plaintiff's construction of § 610 (b). A trial court could conclude that the parties' cross petitions to terminate joint custody and to obtain sole custody evidenced that joint custody was unworkable, but also could conclude that neither party had proven by clear and convincing evidence that awarding sole custody to one party or the other was in the best interest of the child. Under the plaintiff's construction, the court could not modify what both parties stipulated was an unworkable arrangement. Like the Connecticut courts, the Illinois courts do not adopt statutory interpretations that run counter to logic or contravene the statute's purpose.[12] See *People* v. *Stanciel*, 153 Ill. 2d 218, 233, 606 N.E.2d 1201 (1992); *People* v. *Libbra*, 268 Ill. App. 3d 194, 198, 643 N.E.2d 845 (1994), appeal denied, 161 Ill. 2d 534, 649 N.E.2d 421 (1995). Accordingly, we conclude that the trial court in the present case applied the appropriate burden of proof to its determination that sole custody in favor of the defendant was in the best interests of the children.

## II

The plaintiff next contends that the trial court's award of sole custody of the children to the defendant should

[11] The cases cited by the plaintiff in support of this position arose in the context of modification of a sole custody agreement or when only one party had sought to terminate a joint custody agreement. See, e.g., *In re Marriage of Knoche*, 322 Ill. App. 3d 297, 750 N.E.2d 297 (2001) (father's petition only); *In re Marriage of R.S.*, 286 Ill. App. 3d 1046, 677 N.E.2d 1297 (1996) (same).

[12] The legislative history of § 610 (b) sheds no light on whether the Illinois legislature intended to impose the heightened standard of clear and convincing evidence or a lesser standard of proof to decisions to modify joint custody arrangements upon agreement of the parties. See Ill. Public Act 82-1002, § 2; see also House Bill No. 2039, as discussed in House Proceedings (May 20, 1982) pp. 145–55, (June 27, 1982) pp. 5–6 and (June 28, 1982) pp. 3–19, and in Senate Proceedings (June 25, 1982) pp. 136–42.

be reversed because a finding that sole custody was in their best interests was against the manifest weight of the evidence. The plaintiff asserts essentially two justifications for this position: (1) the trial court's decision, for all intents and purposes, ignored the testimony of D. Suzanne Snearly, the children's guardian ad litem, and Anne Phillips, the court-appointed clinical psychologist who evaluated the parties and Alexa; and (2) "the trial court's own factual findings regarding the defendant's behavior [cast] serious doubt on the defendant's judgment as a parent, degree of concern for the physical and emotional well-being of Alexa and Morgan and overall fitness to be the children's sole legal custodian."

We note first that § 5/602 of the Illinois Marriage and Dissolution of Marriage Act (§ 602) requires the trial judge to determine custody in accordance with the best interest of the child.[13] That inquiry is paramount in child custody cases. *In re Marriage of Benevento*, 118 Ill. App. 3d 16, 19, 454 N.E.2d 766 (1983). Although the

---

[13] Section 602 of chapter 750 of the Illinois Compiled Statutes Annotated (West 1999) provides in relevant part: "Best Interest of Child.

"(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

"(1) the wishes of the child's parent or parents as to his custody;

"(2) the wishes of the child as to his custodian;

"(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

"(4) the child's adjustment to his home, school and community;

"(5) the mental and physical health of all individuals involved;

"(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person;

"(7) the occurrence of ongoing abuse as defined in Section 103 of the Illinois Domestic Violence Act of 1986 . . . whether directed against the child or directed against another person; and

"(8) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child. . . .

"(b) The court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child. . . ."

applicable standard—the best interest of the child— has been termed "illusive and difficult to define, making it subject to varying interpretations and opinions"; *In re C.B.*, 248 Ill. App. 3d 168, 176, 618 N.E.2d 598 (1993); the various statutory factors that the trial court considers in determining the best interest of the child provide ample guidance.

The trial court has broad discretion in determining custody, and there is a strong and compelling presumption in favor of the trial court's determination. *In re Marriage of Macaluso*, 110 Ill. App. 3d 838, 843, 443 N.E.2d 1 (1982). That court is in the best position to decide the custody issue because the trial judge observes the parties involved and the demeanor of the witnesses and hears and resolves conflicts in the testimony. *In re Marriage of Soraparu*, 147 Ill. App. 3d 857, 862, 498 N.E.2d 565 (1986), appeal denied, 505 N.E.2d 362 (1987). Because a custody determination necessarily depends on the temperaments, personalities, and capabilities of the parties involved, the trial court is in the best position to evaluate those traits. Id.; *In re Marriage of Felson*, 171 Ill. App. 3d 923, 926, 525 N.E.2d 1103 (1988).

Although the Illinois courts recognize that stability and continuity are major considerations in custody decisions and, accordingly, a presumption exists in favor of the present custodian; *In re Marriage of Ricketts*, supra, 329 Ill. App. 3d 180; once a trial court has determined that the presumption has been overcome, a custody determination will not be overturned on review unless that determination is against the manifest weight of the evidence. *In re Marriage of Stopher*, 328 Ill. App. 3d 1037, 1041, 767 N.E.2d 925 (2002). "Manifest weight has been defined as that weight which is clearly evident, clear, plain and indisputable." *Laroia* v. *Reuben*, 137 Ill. App. 3d 942, 946, 485 N.E.2d 496 (1985); see, e.g., *In re Marriage of Leopando*, 106 Ill. App. 3d 444, 449,

435 N.E.2d 1312 (1982) (trial court's award of custody to father against manifest weight of evidence where record overwhelmingly supported mother's contention by demonstrating her constant, active involvement with child and absence of any such involvement by father), aff'd, 96 Ill. 2d 114, 449 N.E.2d 137 (1983).

With these principles in mind, we turn to the plaintiff's claim that the trial court's decision was contrary to the manifest weight of the evidence. The plaintiff first contends that the trial court should have accepted the recommendation of Phillips and Snearly that it was in the children's best interests to award custody to the plaintiff. She contends that, although a trial court is not required to accept an expert's recommendation as to custody, in this case the court should have accepted Phillips' recommendation based on her conclusion that the defendant had a narcissistic personality that caused him to have more difficulty appreciating the emotional and developmental needs of his children and the impact of his parenting style on them. The defendant argues in response that Phillips' evaluation was deficient in that: she had not performed a full custody study; she had never seen Morgan; she had failed to have the defendant complete a developmental assessment of Alexa; and her clinical interview of the parties had been limited to approximately one and one-half hours. Additionally, the defendant challenges some of Phillips' conclusions regarding the plaintiff's ability to overcome her psychological shortcomings. Therefore, according to the defendant, the trial court acted properly in rejecting Phillips' recommendation.

It is correct that a trial court need not accept the opinion of an expert in a custody case. See *In re Marriage of Felson*, supra, 171 Ill. App. 3d 928 (custody recommendation from court-appointed expert was not binding on court). "A recommendation concerning the custody of a child is only that, a recommendation . . . .

Clearly, a trial court is free to evaluate the evidence presented and accept or reject it in whole or in part." Id. Additionally, the opinion of an expert is only as valid as the bases and reasons supporting it. *In re Marriage of Petraitis*, 263 Ill. App. 3d 1022, 1032, 636 N.E.2d 691 (1993).

As an initial matter, it is important to note that Phillips and Snearly recognized that both parties were seriously flawed individuals whose personal problems often interfered with their ability to prioritize properly the welfare of the children. Despite the parties' shortcomings, however, both Phillips and Snearly recognized that the children have strong emotional attachments to both parents. Thus, the court was not faced with recommendations based on overwhelming evidence favoring one parent over another.

In the present case, as evidenced by its numerous express references to Phillips' testimony and findings pertaining to the psychological limitations of the parties, it is clear that the trial court considered Phillips' opinion in making its custody determination. To the extent that Phillips concluded that joint custody was not a viable option given the parties' inability to work cooperatively, the court's decision is in accord with that opinion. Moreover, the court incorporated in its custody orders Phillips' recommendation that the defendant seek treatment for his personality disorder to enable him to "gain insight into his impact on others . . . ." Thus, the trial court accepted those recommendations by Phillips that it determined were well founded,[14] but it was not required to adopt her position

---

[14] The opinion of an expert is only as valid as the bases and reasons supporting it. *In re Marriage of Petraitis*, supra, 263 Ill. App. 3d 1032; *In re C.B.*, supra, 248 Ill. App. 3d 168. In the present case, there are ample facts in the record, as cited by the defendant, from which the trial court reasonably could have concluded that Phillips' recommendation was based on insufficient data. See *In re C.B.*, supra, 172–76 (concluding that trial court should have used its own discretion balancing best interest of child factors rather than accept custody recommendation of psychiatrists in light

in its entirety or to award custody based on that position.

Similarly, the plaintiff relies on the proposed parenting order submitted by Snearly, recommending that the plaintiff remain the primary custodian for the children. That recommendation principally was based upon the children's need for stability. As the defendant points out, however, the trial court's numerous findings regarding the plaintiff's inability to facilitate and encourage a close and continuing relationship between the children and the defendant, pursuant to the Illinois judgment, severely undermined any finding that the plaintiff should have custody. See *In re Marriage of Ricketts*, supra, 329 Ill. App. 3d 173 (concluding trial court properly determined that father should be substituted for mother as custodial parent, despite strong bond between mother and child, because mother failed to foster continuing relationship between father and child, repeatedly interfered with father's visitation, and failed to facilitate calm and positive environment for child at point of transfer for visitation). The Illinois courts have recognized that, in some cases, "stability is achieved when a child is moved from a home where there is turmoil to one where there is quiet." (Internal quotation marks omitted.) *In re Marriage of Wycoff*, supra, 266 Ill. App. 3d 410, and cases cited therein; see also *In re Marriage of Oros*, 256 Ill. App. 3d 167, 169, 627 N.E.2d 1246 (1994) ("[i]n the present case the original custody award itself resulted in instability for the child, and modification would best serve the statutory policy underlying [§] 610, even if it were difficult to point to a clear change in circumstances since the original

---

of court's conclusion that evaluation was inadequate when based on: three one hour visits with child; brief observation of child with adults vying for custody; meetings that took place in office setting rather than home environment; and when most of time consumed in collecting background data from adults).

award"). Therefore, we conclude that the trial court reasonably rejected Snearly's proposal.

The plaintiff's second basis for claiming that the trial court abused its discretion pertains to the trial court's own orders. In particular, the plaintiff points to the order requiring that a nanny be present at all times when the children are with the defendant and argues that such an order undermines the finding that the defendant is a fit parent.[15] The defendant responds that the order was a *shield for him* against further trumped up charges of abuse, as evidenced by the fact that the condition terminates when Morgan is five or when the children's therapist recommends that the children are self-regulating.

On the basis of the trial court's statement that it did not find that the defendant had abused Alexa, and its expressed concern that, despite the Illinois court's similar rejection of allegations of such abuse, the plaintiff nevertheless continued to levy such allegations; see footnote 9 of this opinion; we accept the defendant's proffered explanation of the motivation behind the court's order.[16] This explanation is supported by the fact that Snearly had recommended that the condition of the nanny's presence be imposed, noting that such a recommendation would be helpful, not because of any harm that might inure to the children, but, rather, for the defendant's benefit in light of the prior allegations. Moreover, it is difficult to view this condition adversely to the defendant because it essentially is a

[15] The defendant cross appealed from the judgment, solely challenging that condition. As represented to this court at oral argument, because the defendant subsequently concluded that this condition had expired under the terms of the order once Morgan turned five years old in May, 2004, and both children became, in his view, self-regulating in their grooming and hygiene, he withdrew his cross appeal.

[16] The order requiring that the children sleep in their own bedrooms similarly may be viewed with this precaution in mind, especially in view of the prefacing clause "[i]n the interests of *all* . . . ." (Emphasis added.)

continuation of the condition set forth in the parties'
parenting agreement, when both parties stipulated to
each other's parental fitness. See footnote 2 of this
opinion.

The trial court awarded sole custody to the defendant
because "there is little likelihood that the [defendant]
will be permitted by [the plaintiff] to have a significant
relationship with the children as contemplated in the
Illinois judgment. [The plaintiff] has frequently failed
to follow the court's orders. She has not been willing or
able to facilitate and encourage a close and continuing
relationship between the [defendant] and the children."
This was a proper consideration and a valid basis upon
which to make a custody determination. See *In re Marriage of Ricketts*, supra, 329 Ill. App. 3d 179–81.

In deciding custody under the best interest of the
child standard, the court statutorily is mandated to
"consider . . . the willingness and ability of each parent to facilitate and encourage a close and continuing
relationship between the other parent and the child."
750 Ill. Comp. Stat. Ann. § 5/602 (a) (8) (West 1999). In
analogous circumstances, the Illinois Appellate Court
observed: "The record is replete with evidence that
[the respondent mother] was unwilling to facilitate and
encourage a close and continuing relationship between
[her minor child] and [the petitioner father]. In its written memorandum and orders, the court found . . .
[that] [t]he evidence clearly established that [the
mother] wilfully failed to foster a close and continuing
relationship between the child and her father by denying
visitation, denying telephone contact, and making disparaging remarks in the presence of the child. There is
no evidence upon which this [c]ourt may reasonably
infer that [the mother] will change her conduct. [Her]
inappropriate conduct adversely affects the child and
it is a relevant factor in determining the best interest
of the child." (Internal quotation marks omitted.) *In*

*re Marriage of Spent,* supra, 342 Ill. App. 3d 652–53. Accordingly the trial court's conclusion that it was in the best interests of the children in the present case to award custody to the defendant was not against the manifest weight of the evidence.

The judgment is affirmed.

In this opinion the other justices concurred.